UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael Charles HOLDER,
Defendant-Appellant.

No. 80–5806
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit B

Aug. 3, 1981.

Elwin R. Thrasher, Jr., Tallahassee, Fla., for defendant-appellant.

Michael T. Simpson, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before RONEY, FRANK M. JOHNSON, Jr., and HENDERSON, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Michael Holder appeals from his conviction, after trial by jury, for possession with intent to distribute hashish, in violation of 21 U.S.C.A. § 841. He urges three grounds of error: (1) the trial court's admission into evidence of a tape recording of a telephone conversation; (2) the trial court's failure to inquire in response to defense counsel's request whether a juror was sleeping during the trial; and (3) the trial court's questioning of a witness. Holder was indicted together with Vance Cook and Gilles Chartrain. Chartrain plead guilty to conspiracy, while Cook was convicted of conspiracy and possession in a separate trial. Chartrain testified at Holder's trial as a government witness.

The principal government witness was William Renton, a DEA agent, who negotiated a hashish purchase with Chartrain. Renton testified that Chartrain gave him a piece of paper containing Chartrain's and Cook's names and a telephone number which Renton was to call the following day in order to finalize arrangements for the hashish purchase. Renton called that telephone number, which was the number of Cook's residence in Tallahassee, Florida, and spoke to Chartrain. After Renton suggested that the sale take place in Panama City, Florida, Chartrain conferred with another person, stating: "Mike, can we make it there by 6:00, and are you sure?" Chartrain then assured Renton that three persons—Cook, Chartrain and one other person—would be there. Renton tape recorded that conversation with Chartrain and it is the admission of that recording that is challenged by Holder. Chartrain testified at trial that Holder was present at Cook's residence when the phone call from Renton was received. Renton and several government witnesses testified that Renton was met in Panama City by Chartrain, Cook, and Holder, all of whom had arrived together in the same vehicle.

The tape recording of Renton's telephone conversation with Chartrain was Government Exhibit 1. The government offered the recording as a statement of a coconspirator. The trial court admitted that recording into evidence subject to later testimony by Chartrain establishing the existence of a conspiracy. The tape was not played until the conclusion of the government's case, which included testimony by a Panama City police detective that Holder admitted to him during questioning that he knew of the hashish and had some involvement in the sale.

■ Under Fed.R.Evid. 801(d)(2)(E), a statement by a coconspirator is not hearsay if it is made "during the course and in furtherance of the conspiracy." In order for such a statement to be admissible, the trial court must determine as a factual matter that the prosecution has shown by a preponderance of the evidence, independent of the statement itself, that a conspiracy existed, that the coconspirator-declarant and the defendant against whom the statement is offered were members of the conspiracy, and that the statement was made during the course and in furtherance of the conspiracy. *United States v. James*, 590 F.2d 575, 582 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). There is no requirement that the defendant against whom the coconspirator's statements are being offered be charged in a conspiracy count. *United States v. Freeman*, 619 F.2d 1112, 1123 (5th Cir. 1980), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981).

■ Holder claims that the existence of a conspiracy was not demonstrated by the government. This contention is without merit. There was testimony by Renton and Chartrain that a conspiracy existed at the time the tape recorded telephone conversation between them took place. Holder also contends that, even if a conspiracy existed at the time of that telephone conversation, such conspiracy existed only between Chartrain and Cook. Holder's assertion that he was not a member of the conspiracy at the time of the telephone

conversation does not help him. An otherwise admissible declaration of one coconspirator is admissible against members of the conspiracy who joined after the statement was made. *United States v. United States Gypsum Co.*, 333 U.S. 364, 393, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *United States v. Anderson*, 532 F.2d 1218, 1230 (9th Cir.), *cert. denied*, 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976); *United States v. Ramirez*, 482 F.2d 807, 816 (2d Cir.), *cert. denied sub nom. Gomez v. United States*, 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973). There was also testimony by a police detective concerning Holder's admissions that he participated in the drug sale. The predicate for admissibility of the coconspirator Chartrain's statements was thus established. *United States v. James, supra*, 590 F.2d at 582.

The second contention of Holder is that the trial court erred by failing to honor defense counsel's request to conduct an inquiry into whether a juror was sleeping during the trial in order to determine the propriety of replacing the juror with an alternate or declaring a mistrial. Holder's attorney brought the problem of the allegedly sleeping juror to the attention of the trial court during a bench conference. The judge remarked that "we can take a recess for lunch or I can holler at him and get the Marshall [sic] to shake him, or whatever you want me to do." A few minutes later the court recessed for lunch. Immediately after the trial was reconvened following lunch, Holder's counsel again approached the bench and mentioned the "possibility that we did have a juror asleep —". The judge responded that "I looked at him right after you said that and he was awake and wasn't asleep. He had his eyes closed momentarily and he wasn't asleep." The government attorney then stated that he would have no objection if Holder's attorney wanted to substitute the alternate juror. Holder's counsel did not, however, then request that the alternate replace the juror. Rather, he suggested to the court that it inquire of the juror whether he was in fact asleep and if the court determined that the juror had been asleep, then a mistrial would be requested. The court then responded that it "looked at him to determine after you said that you thought he might be asleep and he was rocking in his chair and his eyes were open periodically." The court did not question the juror.

■ Under Fed.R.Crim.P. 24(c), a trial court may, in the exercise of its sound discretion, substitute an alternate juror for a regular juror who has become unable or disqualified to perform his duties. *United States v. Dominguez*, 615 F.2d 1093, 1095 (5th Cir. 1980). The trial court's exercise of its discretion in this regard is not to be disturbed absent a showing of bias or prejudice to the defendant. *United States v. Smith*, 550 F.2d 277, 285 (5th Cir.), *cert. denied sub nom. Wallace v. United States*, 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977).

■ We discern no abuse of discretion in the trial court's failure to question the juror who allegedly fell asleep. The court's remarks demonstrate that the court had observed the juror in question and that it concluded that the juror was not in fact asleep. Furthermore, Holder's counsel did not request replacement of that juror by an alternate. Holder has not shown that he was prejudiced by the court's action.

■ Holder's final argument is that the trial court's questioning of Chartrain deprived him of a fair trial. During re-cross examination of Chartrain, defense counsel asked a question which suggested that a person other than Holder had been invited by Chartrain to Panama City where the drug sale was to occur. The government objected to the question and requested a side-bar proffer of whatever foundation there might be to support the question, *i. e.*, any reason that Holder's counsel might have to believe that another person rather than Holder might have been invited. At that point the court questioned Chartrain about when he first met Holder, how long he had known Holder when he received the telephone call from Renton, and whether he understood that Holder was to accompany him to Panama City to meet Renton. De-

fense counsel then resumed his re-cross examination.

This Court recently considered and rejected a similar challenge to a trial court's questioning of a witness. *United States v. Bartlett*, 633 F.2d 1184 (5th Cir. 1981). The Court stated:

> Following our common law heritage, a judge is not a mere moderator, and he has an obligation and duty to question witnesses and comment on the evidence when necessary. *Quercia v. United States*, 289 U.S. 466, 469, 53 S.Ct. 698, [699,] 77 L.Ed. 1321 (1933); *United States v. Jacquillon*, 469 F.2d 380, 387 (5th Cir. 1972). In fact a trial judge may elicit facts not yet adduced or clarify those previously presented and he may maintain the pace of the trial by interrupting and curtailing counsel's examinations as a matter of discretion. *Moore v. United States, supra*, 598 F.2d [439] at 442 [(5th Cir. 1979)]; *United States v. Hill*, 496 F.2d 201, 202 (5th Cir. 1974); *Kyle v. United States*, 402 F.2d 443, 444 (5th Cir. 1968).
>
> Only when the judge's conduct strays from neutrality is a defendant thereby denied a fair trial as required by the Constitution. *See United States v. Middlebrooks*, 618 F.2d 273, 277 (5th Cir. 1980); *United States v. Daniels*, 572 F.2d 535, 541 (5th Cir. 1978).

*Id.* at 1188.

The trial court's questioning of Chartrain was merely an attempt to clarify the confusion that defense counsel's question had introduced. Holder has not demonstrated that the court's questioning deprived him of a fair trial.

AFFIRMED.