■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RUDY VALERIO, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Farlo, J.), rendered March 6, 1987, convicting him of reckless endangerment in the first degree and criminal possession of a weapon in the fourth degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered. No questions of fact have been raised or considered.

The defendant was charged with attempted murder in the second degree, assault in the first degree, reckless endangerment in the first degree and criminal possession of a weapon in the fourth degree arising out of the stabbing of Robert Morrissey on April 12, 1985. It is uncontroverted that the complainant attended a Mets baseball game that night as did his brothers, their friends and the defendant and his girlfriend. The complainant and his friend arrived at the bus stop on Main Street and Roosevelt Avenue sometime after 11:00 P.M. It was there that they met Thomas and Timothy, the complainant's brothers who had also attended the ball game with friends. Robert, Thomas and at least one of their friends had been drinking beer and they waited in a group for 10 to 15 minutes with approximately 30 others for the bus. The defendant and his girlfriend were not a part of this group but were also at the bus stop after the baseball game. When the bus arrived some pushing and shoving ensued and the defendant was pushed to the ground by Thomas Morrissey. When the defendant arose, the complainant stepped between Thomas and the defendant and was struck in the chin by the defendant. He fell back and, when he realized he was swallow-

ing blood, shouted he had been stabbed. Thomas and his friends then began to beat the defendant and one of them recovered a knife from the defendant. The defendant and his girlfriend both testified that there had been no knife and that the group of white youths began to beat the dark-skinned defendant when he asked them not to cut in front of the line for the bus. Both the complainant and the defendant were taken to the hospital and when the complainant identified the defendant as his assailant the defendant was arrested.

At the close of the court's charge and prior to the giving of a requested readback of testimony, the court stated "We had two jurors that were dozing". Defense counsel suggested that the court conduct an in camera inquiry of one juror whose eyes were closed and who seemed to be asleep and, despite the fact that it initially stated it would consider making inquiry of this juror, the court later refused stating "I see no reason to do so". This was reversible error. A juror who has not heard all the evidence in the case or the court's instructions as to the applicable principles of law is grossly unqualified to render a verdict (see, People v Russell, 112 AD2d 451). It is incumbent upon the trial court to conduct a probing and tactful inquiry to determine whether a sworn juror is unqualified. The court may not speculate upon the juror's qualifications but must ascertain the juror's state of mind and must place its reasons for excusing or retaining the juror on the record (see, People v Cargill, 70 NY2d 687; People v Buford, 69 NY2d 290; People v Gallina, 137 AD2d 617; People v Hewlett, 133 AD2d 417). As the court herein unjustifiably failed to make inquiry of the juror, we conclude that the defendant was deprived of his constitutional right to a jury trial and is therefore entitled to a new trial.

A second ground for reversal of the conviction is also present. Following approximately eight hours of deliberations the jury sent the court a note stating that it was deadlocked and unable to reach a verdict. The court did not respond to this note as it had to prior requests and a verdict was returned 1 hour and 20 minutes later, acquitting the defendant of the attempted murder and assault charges and convicting him of reckless endangerment in the first degree and criminal possession of a weapon in the fourth degree. The court completely ignored the contents of the note stating that the jury was deadlocked and no Allen charge was given (see, Allen v United States, 164 US 492). In light of the conflicting and often contradictory evidence presented in this case, there is at least a reasonable inference that the verdict was the

result of the court's failure to properly instruct the jury and, under the circumstances, we cannot conclude that this omission to give meaningful supplementary instructions was harmless error (see, People v Malloy, 55 NY2d 296, cert denied 459 US 847; People v Mezzacapo, 105 AD2d 808; People v Arcarola, 96 AD2d 1081; People v Wilson, 57 AD2d 908).

In light of our determination, we need not address the defendant's claim that the sentence was excessive. We do note, however, that the one-year sentence imposed for the count of criminal possession of a weapon in the fourth degree exceeded the statutory maximum of six months (Penal Law § 70.15 [1]). Thompson, J. P., Weinstein, Eiber and Harwood, JJ., concur.