480 S.E.2d 94

**The STATE, Respondent,**

v.

**James Dennis HURD, Appellant.**

No. 2604.

Court of Appeals of South Carolina.

Heard Nov. 6, 1996.
Decided Dec. 16, 1996.

Randall S. Hiller, Greenville; and Deputy Chief Attorney Joseph L. Savitz, II, of the South Carolina Office of Appellate Defense, Columbia, for Appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, Columbia; and Solicitor Joseph J. Watson, Greenville, for Respondent.

PER CURIAM:

James Dennis Hurd appeals his convictions for possession of burglary tools and criminal conspiracy to commit burglary. We reverse and remand.

## I. FACTS

At approximately 5 a.m. on February 12, 1994, several deputies from the Greenville County Sheriff's Office respond-

ed to a burglary in progress at a Burger King restaurant. After arriving at the restaurant, two of the deputies searched the restaurant and discovered evidence of forcible entry as well as an attempt to open the restaurant safe. One of the deputies remained with the manager at the restaurant while the second deputy began to search the nearby area in his patrol car. A third deputy searched the general vicinity of the Burger King on foot before he also began cruising nearby streets in his patrol car.

Shortly after the second deputy left the Burger King, he noticed two men wearing dark clothing and hoods walking on the road adjacent to a nearby cinema. The deputy questioned the two men, who approached the patrol car slowly with one man approximately fifteen feet in front of the other. The first man was unable to give a street address despite his claim that they were walking home from a friend's house. The deputy continued to question the first man about the location of his home. After the first man again responded vaguely to the questions, the deputy decided to conduct a pat-down search for weapons. Both men were wearing backpacks, and when the deputy frisked the first man, he heard metal or glass sounds within the backpack. The deputy then told both men to put their hands on the rear of the patrol car. The second man refused and ran. At that moment, the third deputy was approaching the cinema and took control of the first man while the second deputy began a foot pursuit of the second man. When the first deputy heard about the foot pursuit over the radio, he proceeded to the parking lot of the nearby cinema, arriving shortly behind the third deputy. Unfortunately, the second deputy fell and could not apprehend the second man. Both the second and the third deputies testified that they did not get a good enough look at the second man to identify him.

While the second deputy was chasing the fleeing suspect, the first and third deputies continued the pat-down search of the first man. They also noticed the metallic sounds coming from the objects within the backpack, so they opened it to search for weapons. Inside, the two deputies discovered a hammer, a crowbar, a flashlight, a screwdriver, an axe handle, and a set of keys. They seized these items as evidence and placed the first man, identified as Raymond Eichler, under arrest for possession of burglary tools. Eichler was then

taken to the Burger King, but the manager was unable to identify him. Eichler did admit to the deputies during this time that he had arrived in a blue Pontiac Firebird which was parked nearby. The deputies eventually found the vehicle parked within a roadway, and used the keys from Eichler's backpack to enter and conduct an inventory search before they had the car towed. Underneath the driver's seat, the deputies found a wallet containing Hurd's Georgia driver's license, Hurd's North Carolina identification card, some money, and a speeding ticket issued to Hurd in Lancaster County approximately four hours earlier. These items were seized.

The deputies then took Eichler to the police station, where he gave a statement. In the statement, Eichler declared that he and Hurd drove to Greenville, obtained a map, and left the car on foot with a number of tools in order to burglarize a theater. He stated that Hurd was the person who ran when the deputy approached. This statement was witnessed by both the first and third deputies as well as a magistrate. A few hours later, Eichler gave another statement to an investigator in which he asserted the same story, and he also added that Hurd was wearing dark clothes with a hooded sweatshirt. The second statement was only witnessed by the investigator. Eichler recanted these statements at trial.

A jury convicted Hurd of both criminal conspiracy and possession of burglary tools. Hurd appeals on a number of grounds but we only address those necessary to this decision.

## II. INVENTORY SEARCH

Hurd claims that the trial court should have excluded the items found in the Firebird because the inventory justification was a mere pretext. We hold that Hurd failed to preserve the issue for appeal. It is axiomatic that a defendant must make a contemporaneous objection on a specific ground in order to preserve an evidentiary issue for appeal. *See, e.g.* *State v. Schumpert*, 312 S.C. 502, 435 S.E.2d 859 (1993); *State v. Smicklevich*, 268 S.C. 411, 234 S.E.2d 230 (1977).

At one point during trial, defense counsel objected "on the grounds that apparently the vehicle was searched without sufficient probable cause, without the obtaining of a warrant, and without consent." At that time the solicitor stated:

Your Honor, at this time I'm just having these marked as exhibits for identification purposes....

\* \* \* \* \* \*

DEFENSE COUNSEL: I'm sorry. I thought he was handing them to me for the purpose of putting them into evidence; and based on the testimony at this point, I would object to it. If they can tie it in, I'm—*I'm not so sure that I might still have an objection based on the inventory at that time based on the officer's testimony.* (Emphasis added).

Later in the trial, the third deputy testified that he performed an inventory search of the car because it was parked within the roadway and needed to be towed. At that point, the following occurred:

SOLICITOR: Your Honor, at this time I would ask that state's exhibits 3 through 7 for identification purposes be entered as evidence.

THE COURT: All right, they're going to put them in evidence.

([DEFENSE COUNSEL] nodded his head; no verbal response.)

THE COURT: Go ahead.

Clearly, Hurd failed to object to the introduction of the items into evidence; in fact, Hurd's counsel stated that he was "not so sure" that he would have an objection once the deputies gave the necessary testimony. Thus, Hurd did not preserve this issue for appeal.

## III. SLEEPING JUROR

Hurd asserts that the trial judge erred in failing to replace a juror who slept during portions of the closing arguments and the jury charge. Hurd's counsel brought this to the attention of the trial judge at the close of the charge, and the following exchange took place:

THE COURT: Anything further from the defense?

DEFENSE COUNSEL: Your Honor, I don't have any objection to the charge, but I'm very concerned about the juror who was in the green multicolored shirt there on the front row. He appeared to be asleep during most of it.

THE COURT: I noticed that, but what can I do about that?

DEFENSE COUNSEL: Well, I would ask the court to remove him and replace him with the alternate. Or bring him in and question him as to whether he knows what you said because I think it's important that he—

THE COURT: I noticed him nodding off a couple of times, but he was alert during most of the charge. I'm not going to remove him.

 We agree with Hurd's contentions. Whether to replace a juror with an alternate is a matter within the sound discretion of the trial judge, and we will not reverse him on appeal absent an abuse of discretion. *State v. Stone*, 290 S.C. 380, 350 S.E.2d 517 (1986); *Abofreka v. Alston Tobacco Co.*, 288 S.C. 122, 341 S.E.2d 622 (1986). However, in criminal cases, "the right of trial by jury shall be preserved inviolate." S.C. Const. art. I, § 14. *See also* U.S. Const. art. III, § 2, and amend. VI. A "defendant has a constitutional right to be tried by competent jurors," which "implies a tribunal both impartial and mentally competent to afford a hearing." *Tanner v. United States*, 483 U.S. 107, 134, 107 S.Ct. 2739, 2755, 97 L.Ed.2d 90 (1987) (Marshall, J., dissenting) (citing *Jordan v. Massachusetts*, 225 U.S. 167, 32 S.Ct. 651, 56 L.Ed. 1038 (1912)). Consistent with these principles, "a juror who has not heard all the evidence in the case or the court's instructions as to the applicable principles of law is grossly unqualified to render a verdict." *People v. Valerio*, 141 A.D.2d 585, 529 N.Y.S.2d 350, 351 (1988).

 The question of sleeping jurors has resulted in a plethora of reported opinions. *See, e.g.* A.G. Barnett, Annotation, *Inattention of Juror from Sleepiness or Other Cause as Ground for Reversal or New Trial*, 88 A.L.R.2d 1275 (1963). In a number of cases where the appellate courts affirmed trial judges even though they did not replace a juror who allegedly fell asleep, the trial judge either questioned the juror as to whether he was attentive, or, in the cases involving instructions, recharged the entire jury. *Id.* Thus, we hold that "it is incumbent upon the trial court to conduct a probing and tactful inquiry to determine whether a sworn juror is unqualified," and "the court must not speculate ... but must ascer-

tain the juror's state of mind and must place its reasons for excusing or retaining the juror on the record." *Valerio,* 529 N.Y.S.2d at 351. *State v. Reevey,* 159 N.J.Super. 130, 387 A.2d 381 (App.Div.1978). *Cf. State v. Holland,* 261 S.C. 488, 201 S.E.2d 118 (1973) (stating that "[i]t is the duty of the trial judge to assure himself that each and every prospective juror is unbiased, fair, and impartial"). Just because a juror closed his eyes does not necessarily mean that he was asleep, but a trial judge should at least attempt to make this determination whenever a juror appears to be asleep. The trial judge committed reversible error by refusing defense counsel's request to question the juror as to whether he heard all of the charge.

## IV. CONCLUSION

We hold that Hurd failed to preserve the issue as to the pretext of the automobile search. Further, we hold the trial judge should have either determined whether the juror was in fact asleep, recharged the entire jury, or replaced the juror. Thus, we reverse Hurd's conviction and order that he be given a new trial.

**REVERSED AND REMANDED.**

CURETON, GOOLSBY and ANDERSON, JJ., concur.