525 S.E.2d 263

**The STATE, Respondent,**

**v.**

**Kevin SMITH, Appellant. (95–GS–40–03704, 40–03706, 40–03707, 40–03708, 40–04282 and 40–11556).**

**The State, Respondent,**

**v.**

**Sheldon Crawford, Appellant. (95–GS–40–3717, 40–3719, 40–3720, 40–3721 and 40–4975).**

**No. 3087.**

Court of Appeals of South Carolina.

Heard Oct. 7, 1999.
Decided Dec. 6, 1999.
Rehearing Denied Jan. 29, 2000.

Chief Attorney Daniel T. Stacey, Assistant Appellate Defender Melody Brown, both of SC Office of Appellate Defense, of Columbia, for appellant Kevin Smith.

Assistant Appellate Defenders Robert M. Dudek, Melody Brown, both of SC Office of Appellate Defense, of Columbia, for appellant Sheldon Crawford.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Solicitor Warren B. Giese, all of Columbia, for respondent.

CONNOR, Judge:

A jury convicted Kevin Smith and Sheldon Crawford of numerous offenses stemming from a riot at the Broad River Correctional Institution. Both appeal, arguing the trial court erred in refusing to replace a juror who appeared to be sleeping during their trial. We affirm.

## FACTS/PROCEDURAL HISTORY

On the morning of April 17, 1995, Willie Leggins, a yard officer at the Broad River Correctional Institution, received a radio report of an escapee from the Monticello deadlock unit. Seeing an inmate run from the unit to the cafeteria, Leggins called for help and pursued. While Leggins waited for back-up, Crawford charged and "stuck [him] a little bit in the side" with a knife. He and the inmate struggled, and Leggins was knocked unconscious. Leggins later identified the inmate as

Sheldon Crawford, whom he had seen in the yard on other occasions and with whom he had conversed.

Lester Shaw, a corrections officer also assigned to the yard, was standing outside the cafeteria window with Sergeant James Cooper when Leggins radioed for assistance. Looking up, Shaw observed an inmate he could not immediately identify lunge at Leggins. He ran to the front door of the cafeteria where he saw Crawford chasing Officer Evadney Sprull with a knife. Shaw intervened and Crawford stabbed him in the left thigh, the lower right leg, and the left chest area, which punctured his lung. As Crawford attacked, Shaw saw Kevin Smith hit Cooper with a baseball bat. Sergeant Cooper, who had accompanied Shaw to the cafeteria, also saw Sprull being chased by Crawford with a knife. As Cooper reached for his tear gas canister, Crawford struck at his chest with the knife. Cooper blocked the blow, but was stabbed in the right forearm. Other inmates then joined in the attack. Smith subsequently hit Cooper approximately twenty-five to thirty times with a baseball bat. When he finally reached his gas canister, Cooper sprayed everyone around him and escaped.

Officer Michael Green witnessed Smith's attack on Cooper. When Green ran over to assist, Smith hit him on the side, hand and head. Some other inmates then cornered Green, but he managed to escape through a side door. Roosevelt Fields, a maintenance gate employee, also observed the attack. When Fields attempted to aid Cooper, Smith hit him with the bat, catching him in the forearm and knocking him down. As Fields went down, Smith hit him again, this time in the back of the neck and head. Fields managed to escape.

When the disturbance began, Mary Mathis, a food services trainee on her first day of work, was touring the kitchen area with Tommy Haselden, the Director of Food Services. As the cafeteria erupted in chaos, Haselden pulled Mathis into the food services office and locked the door. Smith, however, used the baseball bat to break the office windows, and he and Crawford entered along with several other inmates wielding knives. Crawford handcuffed Haselden and the inmates took Haselden, Mathis, and Sprull hostage, holding them in a dry storage area. At various times during the ensuing negotiations, Crawford, armed with a knife, took each hostage to the

front of the cafeteria. Smith also had a knife but did not openly threaten or harm the hostages. The inmates released Sprull after a few hours, but held Haselden and Mathis several hours longer. Afterward, Smith was charged and indicted on two counts of assault and battery with intent to kill (ABWIK), two counts of assault and battery of a high and aggravated nature (ABHAN), and three counts of hostage-taking. The grand jury also indicted Crawford on three counts of ABWIK, three counts of hostage-taking, and one count of ABHAN.

Smith and Crawford were tried jointly in May 1996. During a break, Smith's lawyer called the court's attention to an apparently sleeping juror:

> Your honor, there is a matter that I want to put on the record. It's something that was called to my attention earlier, and in fact, I noticed it myself. One of the jurors appears to have a nodding-off problem. I think one juror keeps falling asleep, and I believe it's the same one. And if it is, not that all the testimony we've heard today is the most exciting, but if this is a pattern, and I believe as an officer of the court that it has been, I would ask to excuse her.

The trial court agreed that the juror, a young white woman, "at least this morning had the appearance of sleeping." But the court went on to state:

> However, I did not [sic] that she, during testimony, would pick up her pad and write something. So at this point, I'm not going to excuse her, but will continue to watch her. Had she not done that, and I noted it on several occasions because I was hoping to try to get her attention to let her know that I was watching her what I thought sleep. But she surprised me in the sense that she reached down and picked up her pad on two occasions and wrote something down.
>
> So given that, she may be a person that is just simply closing her eyes and listening. I don't know. I don't know whether she is or isn't, but I will continue to watch that.

The trial judge then reiterated that he would continue watching the juror and "possibly make some statement about it without singling her out." He added that he would entertain

the motion again at the conclusion of the case. Defense counsel made no further objection and the trial proceeded.

At the close of all the evidence, the defense attorney renewed his motion to remove the juror, stating that from his vantage point she was "sleeping through at least portions of the trial if not the complete trial." The trial court responded as follows:

> All right, I appreciate that. And I have really made a point to watch this morning.... But I have noted that she has been very attentive today throughout this proceeding.
>
> I also, again, would note, because I, too, noted it and watched it closely because, number one, to be perfectly honest with you all, it irritated me that a juror was what appeared to be dozing. So it truly shocked me when I watched her on several occasions reach down and pick up her pad and write something. Now, I don't know what she wrote.... I must presume, however, though, it was something pertinent to this proceeding and it would show to me that [she], at least during those periods where her eyes were closed, she was, nonetheless, listening to the testimony.
>
> Given that fact and given her appearance here today, I would deny the motion to excuse her at this point.

Defense counsel replied "thank you" and the matter was not discussed further during the remainder of the trial.

At the close of the State's case, the trial court directed a verdict for Smith on one count of ABHAN. The jury convicted Smith on the remaining ABHAN count, the three hostage-taking counts, and on one count of ABWIK. On the remaining ABWIK count, the jury found Smith guilty only of ABHAN. The jury convicted Crawford on the three hostage-taking counts in addition to finding him guilty of ABHAN on two of the ABWIK charges, but did not convict on the third count of ABWIK. On June 7, the trial court sentenced Smith to consecutive sentences of twenty years for ABWIK, nine years for each ABHAN, and fifteen years on each count of hostage-taking, to be served after his current term of imprisonment. In addition, Crawford received twelve years on each hostage-taking count and ten years each for the two ABHAN convictions, all to run consecutively after his original sentence.

Smith and Crawford (Defendants) both filed timely notices of appeal. On June 27, 1997, defense counsel for Crawford filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Smith's counsel also filed an *Anders* brief on October 30. On December 18, 1998, we ordered re-briefing on the sleeping juror issue raised in Smith's pro se *Anders* response. This issue is now our sole appellate consideration.

## LAW/ANALYSIS

 Defendants argue the trial court committed reversible error in refusing to dismiss the juror who appeared to be sleeping during trial. A decision on whether to dismiss a juror and replace her with an alternate, however, lies within the sound discretion of the trial court. *State v. McDaniel*, 275 S.C. 222, 268 S.E.2d 585 (1980); *State v. Hurd*, 325 S.C. 384, 480 S.E.2d 94 (Ct.App.1996). Accordingly, we will not reverse the court's decision absent an abuse of that discretion. *Hurd*, 325 S.C. at 389, 480 S.E.2d at 97.

Defendants initially assert that a sleeping juror is tantamount to an absent juror and thereby automatically violates their constitutional right to be tried by a twelve-member jury. *See State v. Shuck*, 278 S.C. 441, 298 S.E.2d 95 (1982). However, we believe the issue is framed more accurately as one of juror misconduct. *See* George L. Blum, Annotation, *Inattention of Juror From Sleepiness or Other Cause as Ground for Reversal or New Trial*, 59 A.L.R.5th 1 (1998 & Supp.1999); 23A C.J.S. *Criminal Law* § 1437 (1989 & Supp. 1999); *State v. Cleveland*, 959 S.W.2d 548 (Tenn.1997) (distinguishing case of absent juror, which implicated fundamental constitutional right to trial by jury and therefore required automatic reversal, from that of juror who slept through five minutes of testimony, which required a finding of prejudice to defendant before reversal).

Misconduct of a juror is "a fact to be determined by the trial judge from the circumstances" of each case. 23A C.J.S. *Criminal Law* § 1437 at 381; *see also State v. Aldret*, 333 S.C. 307, 509 S.E.2d 811 (1999) (trial court has broad discretion in assessing allegations of juror misconduct); *State v. Kelly*, 331 S.C. 132, 502 S.E.2d 99 (1998), *cert. denied*, 525 U.S. 1077, 119

S.Ct. 816, 142 L.Ed.2d 675 (1999) (same). The general test for evaluating alleged juror misconduct is whether there in fact was misconduct and, if so, whether any harm resulted to the defendant as a consequence. *See* 23A C.J.S. *Criminal Law* § 1437 at 381. Indeed, the great majority of courts in other states considering the sleeping juror question have utilized this approach. *See* 59 A.L.R.5th at 42 (because harm to defendant does not automatically follow a determination that a juror was sleeping, most states require a defendant to show prejudice such as the juror "failed to follow some essential part of the proceedings"); *People v. Bradford,* 15 Cal.4th 1229, 65 Cal.Rptr.2d 145, 939 P.2d 259 (1997), *cert. denied,* 523 U.S. 1118, 118 S.Ct. 1796, 140 L.Ed.2d 937 (1998); *Hanes v. People,* 198 Colo. 31, 598 P.2d 131 (1979) (en banc); *Mirabel v. State,* 182 So.2d 289 (Fla.Dist.Ct.App.1966); *Williams v. State,* 190 Ga.App. 361, 378 S.E.2d 886 (1989); *Chubb v. State,* 640 N.E.2d 44 (Ind.1994); *State v. Cuevas,* 281 N.W.2d 627 (Iowa 1979); *State v. Kimmel,* 202 Kan. 303, 448 P.2d 19 (1968); *State v. King,* 355 So.2d 1305 (La.1978); *State v. Lyons,* 466 A.2d 868 (Me.1983); *Wright v. State,* 24 Md.App. 309, 330 A.2d 482 (1975); *State v. Henderson,* 355 N.W.2d 484 (Minn.Ct.App. 1984); *Hines v. State,* 417 So.2d 924 (Miss.1982); *State v. Whitman,* 788 S.W.2d 328 (Mo.Ct.App.1990); *State v. Glover,* 230 N.J.Super. 333, 553 A.2d 808 (1988); *People v. Ferguson,* 165 A.D.2d 789, 564 N.Y.S.2d 278 (1990); *State v. Williams,* 33 N.C.App. 397, 235 S.E.2d 86 (1977); *Commonwealth v. Jones,* 314 Pa.Super. 497, 461 A.2d 267 (1983); *State v. Chestnut,* 643 S.W.2d 343 (Tenn.Crim.App.1982); *State v. Pace,* 527 P.2d 658 (Utah 1974); *Ellis v. Commonwealth,* 227 Va. 419, 317 S.E.2d 479 (1984); *State v. Hughes,* 106 Wash.2d 176, 721 P.2d 902 (1986) (en banc). Federal courts examining the issue have held similarly. *See United States v. Holder,* 652 F.2d 449 (5th Cir.1981); *United States v. Machi,* 811 F.2d 991 (7th Cir.1987); *United States v. Key,* 717 F.2d 1206 (8th Cir.1983); *United States v. Springfield,* 829 F.2d 860 (9th Cir.1987); *United States v. Barrett,* 703 F.2d 1076 (9th Cir.1983).

Defendants argue that our opinion in *State v. Hurd,* 325 S.C. 384, 480 S.E.2d 94 (Ct.App.1996), controls this case. In *Hurd,* we reversed a defendant's conviction where the trial court refused a request to question a juror who appeared to be sleeping during portions of closing arguments and jury in-

structions. We stated that because a juror with closed eyes is not necessarily asleep, a trial court "should at least attempt to make this determination whenever a juror appears to be asleep." *Hurd*, 325 S.C. at 390, 480 S.E.2d at 97. The trial court in *Hurd* made no such attempt. Thus, we held that the trial judge "should have either determined whether the juror was in fact asleep, recharged the entire jury, or replaced the juror." *Id.*

We find *Hurd* distinguishable from the instant case. In *Hurd*, the trial court at least implicitly found that the juror was in fact asleep at some points during the charge, declaring specifically that he "noticed [the juror] nodding off a couple of times" but that the juror "was alert during most of the charge." *Id.* at 389, 480 S.E.2d at 97. Here, on the other hand, the trial judge stated on the record that he concluded the juror was awake and listening with her eyes closed, because on several occasions she surprised him by picking up her notebook and writing something down. In this instance, therefore, the trial court did make the requisite factual finding mandated by *Hurd*, and he needed to take no further action. *See id.: People v. DeSantis*, 2 Cal.4th 1198, 9 Cal.Rptr.2d 628, 831 P.2d 1210 (1992) (en banc), *cert. denied*, 508 U.S. 917, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993) (no formal hearing was required and trial court's self-directed inquiry was sufficient where court observed jurors closely to ascertain whether they were asleep and determined none were dozing); *Golsun v. United States*, 592 A.2d 1054 (D.C.1991) (trial court's unchallenged factual finding that juror was not asleep, based on personal observation of trial judge, sufficient to bar reversal on appeal); *State v. Glover*, 230 N.J.Super. 333, 553 A.2d 808, 813 (1988) (no reversible error in court's refusal to "take appropriate action" where "judge himself was aware prior to it being called to his attention that a certain juror had his eyes closed," but the "judge did not appear to be of the opinion that the juror had been sleeping"); *People v. McIntyre*, 193 A.D.2d 626, 597 N.Y.S.2d 442 (1993) (no inquiry necessary where trial court had benefit of its observations and was satisfied juror was not sleeping); *see also United States v. Holder*, 652 F.2d 449 (5th Cir.1981) (no abuse of discretion in trial court's refusal to question juror who appeared to be asleep, where judge admitted juror's eyes were momentarily closed but noted he

believed juror was awake because he had observed juror rocking in his chair with his eyes open periodically); *United States v. Key,* 717 F.2d 1206 (8ᵗʰ Cir.1983) (no abuse of discretion in trial court's refusal to replace allegedly sleeping juror with alternate where record reflected legitimate basis for finding juror was awake; trial court had observed juror and believed that, though his eyes were shut sometimes, juror had heard all the evidence and simply had a tendency to close his eyes and listen); *United States v. Barrett,* 703 F.2d 1076 (9ᵗʰ Cir.1983) (if a legitimate basis exists, trial court may take judicial notice of fact that juror was not sleeping without inquiring into an allegation that the juror was asleep).

Moreover, we are guided by a recent line of juror misconduct cases in which our Supreme Court rejects a per se reversible error rule. In each of these cases, the Supreme Court has required the defendant to prove prejudice. In *State v. Grovenstein,* 335 S.C. 347, 517 S.E.2d 216 (1999), the Court rejected a presumption of prejudice analysis and held that a defendant must establish he was denied a fair trial as a result of an alternate juror's momentary participation in jury deliberations. In requiring a defendant to demonstrate prejudice, the Court reiterated that "unless the misconduct affects the jury's impartiality, it is not such misconduct as will affect the verdict." *Id.* at 352, 517 S.E.2d at 218 (quoting *State v. Kelly,* 331 S.C. 132, 141, 502 S.E.2d 99, 104 (1998)). Two other recent juror misconduct cases also applied this rule. *See State v. Aldret,* 333 S.C. 307, 509 S.E.2d 811 (1999) and cases cited within (holding burden is on defendant to establish prejudice from jury's premature deliberations); *State v. Kelly,* 331 S.C. 132, 502 S.E.2d 99 (1998), *cert. denied,* 525 U.S. 1077, 119 S.Ct. 816, 142 L.Ed.2d 675 (1999) (finding death penalty case defendant failed to show prejudice from presence in jury room of religious pamphlet concerning God's view of death penalty, where misconduct had not affected the jury's verdict). These cases are consistent with prior court opinions stating that a showing of prejudice must be made to warrant relief in cases of jury misconduct. *See State v. Hunter,* 320 S.C. 85, 463 S.E.2d 314 (1995) (finding denial of defendant's motion for new trial warranted where defendant failed to demonstrate prejudice resulting from jury misconduct involving juror's use of racially offensive word to refer to some testimony given at

trial); *State v. Wasson,* 299 S.C. 508, 386 S.E.2d 255 (1989) (stating burden on defendant to show not only error but resulting prejudice from jurors' reading of trial-related newspaper article); *State v. Bonneau,* 276 S.C. 122, 276 S.E.2d 300 (1981) (holding that it is incumbent on a defendant to demonstrate the presence of an alternate juror denied him a fair trial); *State v. Salters,* 273 S.C. 501, 257 S.E.2d 502 (1979) (stating that to gain relief, defendant must make reasonable showing of potential prejudice resulting from possible juror exposure to newspaper publicity about defendant's trial); *State v. Carrigan,* 284 S.C. 610, 328 S.E.2d 119 (Ct.App.1985) (holding mere fact that conversation occurred between juror and witness for State did not necessarily prejudice defendant).

Finally, as noted above, the trial court found that the juror who appeared to be sleeping was in fact alert. Defendants apparently accepted this finding and did not ask the trial court to voir dire the juror or undertake further inquiry. Because Defendants bore the burden to show the juror was actually asleep, their failure, unlike the defendant in *Hurd,* to request direct examination of the juror waives any complaint on appeal. *See State v. Cooper,* 334 S.C. 540, 514 S.E.2d 584 (1999) (counsel must request trial court to investigate juror misconduct); *State v. Aldret,* 333 S.C. 307, 509 S.E.2d 811 (1999) (claimed error was not preserved where there was no indication in the record that defendant asked trial court to question jurors regarding possible premature deliberations; had such a request been timely made the trial court could have voir dired the jury to determine if, in fact, there had been premature deliberations and whether the defendant had been prejudiced thereby); *Lloyd v. Rawl,* 63 S.C. 219, 41 S.E. 312 (1902) (trial court did not err in refusing to grant new trial, where juror who admitted to "taking whiskey" and feeling unwell seemed "as if asleep" but defendant made no motion requesting court to take affirmative action); *People v. Bradford,* 15 Cal.4th 1229, 65 Cal.Rptr.2d 145, 939 P.2d 259 (1997) (trial court did not abuse its discretion in failing to investigate sleeping juror where defense counsel did not request a hearing or further investigation into the matter); *United States v. Baker,* 609 F.2d 134 (5th Cir.1980) (no grounds for reversal demonstrated where defendants claimed juror slept through instructions but did not urge court to

ascertain whether juror was actually asleep); *United States v. Moore,* 580 F.2d 360 (9th Cir.1978), *cert. denied,* 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978) (trial court did not abuse its discretion in refusing to examine a dozing juror sua sponte where court ordered windows opened, jurors remained alert for balance of proceeding, and defendant did not ask court to take additional corrective measures); *cf. State v. Bennett,* 328 S.C. 251, 493 S.E.2d 845 (1997) (objection in trial court must encompass argument on appeal).

Because Defendants did not demonstrate the juror was in fact asleep, we need not reach the question of prejudice. Accordingly, the trial court did not abuse its discretion in refusing to dismiss the juror, and the decision below is

**AFFIRMED.**

GOOLSBY and ANDERSON, JJ., concur.