694 S.E.2d 224

**The STATE, Respondent,**

v.

**Charles CARMACK, Appellant.**

**No. 4688.**

Court of Appeals of South Carolina.

Heard March 2, 2010.

Decided May 24, 2010.

Rehearing Denied June 24, 2010.

194

Jack B. Swerling, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Julie M. Thames, all of Columbia; and Solicitor Douglas A. Barfield, of Lancaster, for Respondent.

THOMAS, J.

Charles Carmack (Carmack) was indicted and tried on four counts of assault and battery with intent to kill and one charge of possession of a firearm during the commission of a violent

crime. A jury found him guilty on four counts of the lesser included offense of assault and battery of a high an aggravated nature (ABHAN) and acquitted him on the firearm charge. On appeal, Carmack argues the trial court erred: (1) in failing to sequester all the witnesses; (2) in failing to remove the jury foreperson; (3) in admitting Carmack's allegedly involuntary statement; (4) in admitting extrinsic evidence of prior statements made by a witness; and (5) in excluding a school-related document. We affirm.

## FACTS

On July 28, 2006, John Wood hosted fifty to seventy people for a party he dubbed "Farm Fest" on property he owned in Fairfield County. Although a bandstand was erected outdoors, rainy conditions forced many of the party-goers to celebrate in an adjacent barn. While in the barn, Carmack and Scott Fowler engaged in a brief altercation, after which Carmack left the barn and headed toward his pick-up truck parked nearby.

Carmack's brother, Chris Carmack (Brother), testified that as Carmack approached his truck he was attacked by a group of men. Daniel Holt testified that after this second altercation Carmack retrieved a rifle from his truck and fired one shot in the air and then approached the barn. Brother followed Carmack and attempted to cool the situation;[1] however, another shot was fired which penetrated the barn wall and injured three people inside and paralyzed a fourth from the waist down.

In the early morning hours following the party, then seventeen-year-old Carmack surrendered to police, was arrested, and placed in an interview room at the Fairfield County Sheriff's Office. Deputy Sheriff Boney read Carmack his rights, and he initialed a waiver of rights form around 2:00 or 2:30 a.m. Carmack did not initial next to the right to remain silent; however, Deputy Boney testified he read Carmack this

---

1. It is unclear as to how Brother attempted to cool the situation; whether he grabbed Carmack, or grabbed the gun. Brother's testimony is less than clear as to what extent he was engaging Carmack (i.e., whether Brother's hands were on the gun and Carmack, or just Carmack).

right and Carmack indicated he understood it. Furthermore, although Carmack said he had been drinking, Deputy Boney noticed no signs he was intoxicated as he was not slurring his speech and was steady on his feet. Deputy Boney then recorded Carmack's statement by hand, which Carmack subsequently read and signed.

At trial, Carmack moved to have the State's thirty-four witnesses sequestered; however, the trial court sequestered only the witnesses who had not previously given written statements. One of the unsequestered witnesses was Brother, who offered testimony providing more detail and an account of the evening that differed slightly from his prior written statement. When questioned by the State, Brother maintained the prior statement was accurate, but admitted some details were left out. The State then successfully admitted the prior written statement into evidence over Carmack's objection.

During the trial, Carmack's counsel learned the jury foreperson, Watts, had allegedly discussed the case with his live-in girlfriend, Mary, who had in turn allegedly discussed the case with a colleague, Nona Money. The trial court met with the jury foreperson twice and was convinced that no juror misconduct had occurred. Money testified *in camera* that when she inquired whether Mary and Watts would still be taking a vacation, Mary responded: "Yeah. It's cut and dry case. [sic] Everyone knows that he did it." The trial court again decided not to excuse Watts.

Carmack called Cindy Burley as his sole defense witness and sought to introduce a documented "service plan" or "Individual Educational Plan" (IEP) as of evidence an alleged learning disability. The State objected, and the trial court ruled the evidence to be inadmissible hearsay because it contained subjective information. Carmack immediately rested his case.

The jury convicted Carmack on four counts of the lesser included offense of ABHAN, and the trial court sentenced Carmack to twenty-five years.[2] This appeal follows.

---

**2.** This sentence consisted of ten years on the first ABHAN conviction, ten years consecutive on the second ABHAN conviction, five years consecutive on the third ABHAN, and finally, five years concurrent on the final ABHAN conviction.

## ISSUES ON APPEAL

I. Did the trial court err in failing to sequester all of the State's fact witnesses?

II. Did the trial court err in failing to remove the jury foreperson?

III. Did the trial court err in admitting Carmack's statement?

IV. Did the trial court err in admitting extrinsic evidence of Brother's statement to police?

V. Did the trial court err in failing to allow the IEP into evidence?

## STANDARD OF REVIEW

In criminal cases an appellate court sits to review errors of law only. *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006).

## LAW/ANALYSIS

### I. Sequestering Witnesses

Carmack argues the trial court erred in failing to sequester all the State's fact witnesses. We disagree.

While Rule 615, SCRE allows for sequestration of a witness, "[t]he granting or refusal of a motion to sequester witnesses is solely discretionary." *State v. Jackson,* 265 S.C. 278, 281, 217 S.E.2d 794, 795 (1975). The trial court's ruling on a motion to sequester a witness will not be disturbed on appeal absent an abuse of discretion and prejudice to an appellant. *State v. Sullivan,* 277 S.C. 35, 46, 282 S.E.2d 838, 844 (1981); *see Jackson,* 265 S.C. at 282, 217 S.E.2d at 796 (finding no error when trial court's ruling demonstrated no abuse of discretion or prejudice to appellant). "The mere opportunity for the State's witnesses to compare testimony is insufficient to compel sequestration." *Sullivan,* 277 S.C. at 46, 282 S.E.2d at 844.

Here, the trial court ruled that only witnesses who had not previously given written statements needed to be sequestered. While this ruling allowed many of the State's witnesses to

remain in the courtroom, the threat that exposure to other testimony would taint subsequent testimony was alleviated by affording Carmack the opportunity to impeach any witnesses who altered their accounts by way of their previous written statements. Accordingly, the trial court did not abuse its discretion and Carmack was not prejudiced by this ruling. *See Jackson*, 265 S.C. 278, 217 S.E.2d 794 (affirming a trial court's denial of a motion to sequester witnesses when the witnesses had testified at a previous trial and could easily be impeached with their prior testimony).

## II. Removal of Foreperson

■ Carmack argues the trial court erred in failing to remove the jury foreperson, Watts. We disagree.

■ The decision to dismiss a juror and replace him with an alternate rests in the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *State v. Smith*, 338 S.C. 66, 71, 525 S.E.2d 263, 265–66 (Ct.App.1999). Premature deliberations may amount to misconduct that could affect fundamental fairness. *State v. Aldret*, 333 S.C. 307, 311, 509 S.E.2d 811, 813 (1999). "The trial court has broad discretion in assessing allegations of juror misconduct" and unless such misconduct affects the "jury's impartiality, it is not [of the type] as will affect the verdict." *State v. Kelly*, 331 S.C. 132, 141, 502 S.E.2d 99, 105 (1998).

In this case, Carmack's counsel learned Watts may have discussed the case with his live-in girlfriend, Mary, who subsequently may have mentioned the discussion to her boss, Nona Money. As a result, the trial court met with Watts on two occasions. During these meetings, Watts was under oath and informed the court he had neither discussed the matter with his girlfriend nor engaged in any activity that would affect his impartiality.

We find the trial court was in the best position to assess Watts's veracity and its refusal to dismiss Watts is deserving of this court's deference. *See id.* at 142, 502 S.E.2d at 104 (stating "the trial judge is in the best position to determine the credibility of the jurors; therefore, this [c]ourt should grant him broad deference"). Furthermore, as the State indicates, other than Carmack's allegations, no evidence exists

on the record to support that Watts discussed the matter with Mary. Rather, the record merely reflects Money testified that *Mary stated,* "It's cut and dry case. [sic] Everyone knows he did it." Nothing suggests Watts made any statements to Mary. Accordingly, as Carmack presents no other allegation of prejudice, the ruling of the trial court is affirmed.

### III. Carmack's Statement

Carmack argues the trial court erred in admitting his statement to the jury because it was involuntary. We disagree.

The process for determining whether a statement is voluntarily made is two-fold; requiring a determination by both the trial court and the jury. *State v. Miller,* 375 S.C. 370, 379, 652 S.E.2d 444, 448 (Ct.App.2007). In order for the issue to be submitted to the jury, the State must prove to the trial court, by preponderance of the evidence, that the statement was freely and voluntarily given. *Id.* On appeal, this court reviews the trial court to "simply determine[ ] whether the . . . ruling is supported by *any* evidence." *Id.* (emphasis added).

In order to determine whether a statement is voluntary, the trial court must inquire whether under the totality of the circumstances the suspect's will was overborne. *Id.* at 384, 652 S.E.2d at 451. Some factors to consider in the totality of the circumstances include "the youth of the accused, his lack of education, or . . . low intelligence, the lack of . . . advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and . . . physical punishment such as the deprivation of food or sleep." *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (internal citations omitted); *see Miller,* 375 S.C. at 385–86, 652 S.E.2d at 452 (stating the totality of the circumstances includes the crucial elements of police coercion: length of the interrogation, location, continuity, defendant's maturity, defendant's education, physical conditions, and the defendant's mental health).

In this case, Carmack points to his age, his ninth-grade education, the fact that it was late in the evening and he had earlier been drinking, and the lack of his initials next to the

right to remain silent on the waiver of rights form. However, evidence also exists to demonstrate that Officer Boney had fully advised Carmack of his rights and Carmack indicated he understood them. Although Carmack had been drinking earlier that night, Officer Boney noticed nothing to suggest he was intoxicated. Further, although Carmack's initials are lacking next to the line informing him of his right to remain silent, he demonstrated his ability to read and signed all other areas of the waiver of rights form. Accordingly, based on our standard of review, evidence exists to support the trial court's ruling that the statement was voluntary. *See Miller*, 375 S.C. at 378, 652 S.E.2d at 448 (stating this court will affirm the trial court's ruling on the voluntariness of a statement if supported by any evidence). Thus, the issue was properly submitted to the jury, and the ruling of the trial court is affirmed.

### IV. Extrinsic Evidence of Brother's Statement

Carmack argues the trial court erred in allowing the State to introduce Brother's prior written statement into evidence because, he alleges, Brother admitted he made a prior inconsistent statement, rendering it inadmissible under Rule 613(b), SCRE. We disagree.

As an initial matter, in order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge. *State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693 (2003). Arguments raised for the first time on appeal are not preserved for our review. *Knight v. Waggoner*, 359 S.C. 492, 496, 597 S.E.2d 894, 896 (Ct.App.2004).

The State takes the position that Carmack's argument under Rule 613, is not preserved. Specifically, the State maintains Carmack's only argument at trial was that the statement was inadmissible under Rule 801(d)(1). However, the record demonstrates Carmack's objection specifically recognized that the solicitor could cross-examine the content of the statement, but the statement itself was not admissible. Although Carmack did make reference to Rule 801(d) he clarified his objection by stating; "If he wants to read the statement . . . into the record, . . . that's certainly appropriate. The document itself [is] what we have an objection to." While

Carmack never explicitly mentioned Rule 613 by name, the record demonstrates Carmack's argument against the admissibility of the written statement itself was sufficiently raised to the trial court. *See State v. Caldwell*, 378 S.C. 268, 283, 662 S.E.2d 474, 482 (Ct.App.2008) (noting a "party need not use the exact name of a legal doctrine in order to preserve it, but it must be clear that the argument has been presented on that ground" (quoting *Dunbar*, 356 S.C. at 142, 587 S.E.2d at 694)). Accordingly, we address the merits of the argument.

 A decision to admit extrinsic evidence of a prior inconsistent statement will not be reversed absent a manifest abuse of discretion that prejudiced the appellant. *State v. Blalock*, 357 S.C. 74, 78, 591 S.E.2d 632, 635 (Ct.App.2003).

On reply, the State argues the trial court did not err because the statement is admissible under Rule 801(d). However, the record indicates Carmack agreed the statement could be read into the record; accordingly, this is tantamount to conceding the statement was not hearsay pursuant to Rule 801(d). This concession leaves the only remaining inquiry to be whether the written statement itself is admissible.

Rule 613 (b) provides:

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is advised of the substance of the statement, the time and place is was allegedly made, and the person to whom it was made. . . . If a witness does not admit [making] . . . the prior inconsistent statement, extrinsic evidence of such statement is admissible.

 When the issue is whether the witness admitted making the prior inconsistent statement, the admission must be unequivocal. *Blalock*, 357 S.C. at 80, 591 S.E.2d at 635. "Generally, where the witness has responded with anything less than an unequivocal admission, trial court's have been granted wide latitude to allow extrinsic evidence proving the statement." *Id.* at 80, 591 S.E.2d at 636. Here, Brother testified his prior statement was "accurate." Further he indicated that certain details were not in his original statement because such details were not inquired into at the time and "everything was chaotic." Accordingly, Brother did not unequivocally admit making a prior inconsistent statement;

202

therefore, the trial court did not abuse its discretion in allow-ing extrinsic evidence of the statement. *See id.* (finding a witness had not unequivocally admitted the prior inconsistent statement simply by virtue of recognizing some details were lacking in the prior statement).

### V. The School–Related Document

Finally Carmack argues the trial court erred in not admitting the IEP into evidence. We disagree.

"The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion," which occurs when the conclusions of the trial court lack evidentiary support or are controlled by an error of law. *State v. Rivera,* 384 S.C. 356, 360, 682 S.E.2d 307, 309 (Ct.App.2009). "An error without prejudice does not warrant reversal." *State v. King,* 367 S.C. 131, 136, 623 S.E.2d 865, 867 (Ct.App.2005). Rule 803(6), SCRE excepts from the prohibition against hearsay, records of regularly conducted activity, and provides:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular prac-tice of that business activity to make [the same] . . .; *provided however,* that subjective opinions and judgments found in business records are not admissible.

The trial court found the document to be inadmissible hearsay, under Rule 803(6) because the document contained subjective opinions. Carmack maintains the document should have been admitted as it contained information of "acts, events, conditions, or diagnoses, made at or near the time" the document was prepared.

In this case, Carmack sought to introduce the IEP in an effort to demonstrate an alleged learning disability in the hopes of providing the jury with evidence that his statement was not voluntary. The IEP was prepared at a meeting attended by three teachers from Carmack's school familiar with his scholastic performance. While the trial court ruled the actual report to be inadmissible, the court never precluded

Carmack from introducing testimonial evidence through any of the school representatives familiar with Carmack's work performance. Thus, Carmack's contention that he was precluded from putting on a full defense as a result of the document being excluded is unfounded. Accordingly, we find no reversible error. *See King,* 367 S.C. at 136, 623 S.E.2d at 867 (stating the trial court's ruling will not be reversed unless it amounted to prejudicial error).

## CONCLUSION

For the above mentioned reasons the ruling of the trial court is **AFFIRMED.**

FEW, C.J., and HUFF, J., concur.