8173

STATE v. FERGUSON.

1. MURDER—PARENT AND CHILD—CHARGE.—In the trial of a murder case of a son for the killing of the father, the Court should designate the parties by their legal titles as defendant and deceased and not by the names of their family relations. Here the Court is not sure but that the charge impressed the jury with the idea that the son did not have the same right to defend himself against an assault by his father as from an assault by another person.

2. SELF-DEFENSE—OPPROBRIOUS LANGUAGE.—While the first statement by the Court in the charge as to the use of opprobrious language. which may have brought on a difficulty, is not strictly correct, there could no harm have come of it, as he immediately thereafter stated the correct rule, as such opprobrious language as may be expected to bring on and actually resulted in bringing on the difficulty. This rule is not limited to opprobrious language used to the defendant, but may include language used to one under his protection. The terms "difficulty" and "physical encounter" in the application of this rule mean the same.

3. IBID.—IBID.—ISSUES.—Whether the opprobrious language should ordinarily be expected to bring on a difficulty, is for the jury.

4. A REASONABLE DOUBT is a strong, well-founded and substantial doubt arising in and growing out of the testimony in the case, and not a "painful anxiety."

.5. MALICE prompts the wilful or intentional doing of a wrongful act without just cause or excuse. A heart may be full of sin and black and yet not a legally malicious heart.

,6. IBID.—CHARGE.—The instruction as to how a jury should judge of a man's heart, held to mean that they should judge of it by his language and conduct, by what they know of him from the evidence in the case and their own observations and experience of human passion and conduct.

'7. BURDEN OF PROOF—ACCIDENTAL KILLING—CHARGE.—Taking this charge as a whole the jury may have concluded that the burden was upon defendant to show that his plea of accidental killing must be made out by the preponderance of the vidence, which is not the law.

Before GAGE, J., Abbeville, September term, 1911. Reversed.

Indictment against J. H. Ferguson. Defendant appeals.

*Messrs. Wm. N. Graydon, J. Moore Mars* and *M. L. Bonham,* for appellant. *Mr. Bonham* cites: *Rule as to charging on facts:* 47 S. C. 488; 87 S. C. 193. *Charge in interrogative form:* 49 S. C. 488, 553; 48 S. C. 136. *Opprobrious language:* 75 S. C. 510. *Burden of proof in accidental killing:* 68 S. C. 304.

*Solicitor R. A. Cooper,* contra. Oral argument.

April 3, 1912. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. Defendant was tried for the murder of his father. He was convicted of manslaughter, and appeals from the sentence. His contention was that the killing was accidental, and also that he was acting in self-defense, when the pistol, which he pointed at his father to stop his deadly assault upon him, was accidentally dis-

charged.    At the trial, his mother testified that the defend-
ant and his father were quarreling in defendant's house; that
she made an assertion to which defendant replied: "You
are a damn lie."    This was the opprobrious language to
which the presiding Judge referred in his charge to the
jury.

The exceptions are all to the charge, which follows, the
language specifically excepted to being italicized: "Gentle-
men of the jury: The indictment charges two things: first,
that James Ferguson killed John Ferguson; and, secondly,
that he killed him with malice aforethought.    If you are
satisfied about the first issue, that the son did kill the father,
before you take up the other issue with what intent he did it,
you will refer to an issue which the son makes himself in the
pleading.    His plea is that he was excusable in doing it,
because what he did he did in defense of himself, and while
that which happened, to wit, the shooting and death of his
father, was not anticipated or intended by him, yet he took
steps to defend himself, and in the doing of which death
came to his father.    It is a peculiar plea; I have never seen
one like it before; but I think I can state it to you clearly.
In the first place, not every man can plead self-defense; only
those who are without fault in bringing on the difficulty.
Start at the inception of this difficulty; how was it brought
on?    Was it brought on by the wrongful conduct of the
son?    *If the son used language towards the father, or
towards the mother in the father's presence, of so opprobri-
ous a character as was likely under all the circumstances to
create a difficulty, and if a difficulty actually ensued from the
use of that language, and in the difficulty the son killed the
father, the son may not plead self-defense.*    I do not tell
you that the son did bring on the difficulty; I do not tell you
that the son used any language to bring it on, and I do not
tell you that the death flowed out of the language in the
difficulty.    Those are questions for the jury, and the jury
must find those facts.    All that I tell you is that if you find

those facts against the son; *if you find that he was guilty of the use of approbrious and blamable language; that such language might reasonably be expected to bring on a difficulty; that it actually did bring on the difficulty, and that the difficulty resulted in the death of the father; then the son cannot plead self-defense.* If you find those facts against him, you rule self-defense out. If you find those facts for the son, then you go one step further. Now, the son was in his own house; he had the right to protect himself; he had the right to stand his own ground. Did the father assault the son with a knife? That is a pregnant issue in this case. Did the father have an open weapon in his hand, dangerous to life, and did he assault the son with it? Much of your verdict will depend upon how you find that issue. If he did not, the plea of self-defense falls to the ground. But if the father did have an open knife, and if he was about to cut the son, and if the son thought so—reasonably thought so—he had the right to do one of two things: he had the right to save his life. How? He had the right to save his life even by striking his father down, as lamentable a thing as that is, as awful a thing as that is—not in law, I mean; I mean in society. A son, to save his life, even has the right, if he see proper to do it, to take his father's life; he has the right to slay his father. Now, if he has the right to slay his father, he has the right to use other means to prevent his father from killing him. If, instead of pointing the pistol at his father and shooting his father, to save the felony of the father upon himself, he points the pistol at his father to bluff the father, to deter him, that is the same sort of right, and if the pistol goes off unwittingly, the case is not altered. His right cannot be minimized if the pistol went off unwittingly, when he would have been excused if it had gone off wittingly. So if you find those to be the facts; if you find that the old man, the father, assaulted the boy with an open knife, was about to cut him, and the son seized the pistol to bluff the father, and his object was to save himself, in bluff-

ing his father, and to save himself from death or serious
bodily harm, and if he killed the father under those circum-
stances, you write a verdict of not guilty. But the true his-
tory of the case is for the jury. And I revert back to the
fact: Did the father have the knife? Did the father draw
the knife upon the son? Did the son believe the father was
going to kill him, and did he reasonably believe it—would
the ordinary man, like circumstanced, have come to the
same conclusion, and did the son believe the necessity was
upon him to do what he did? The last thing a man must
do is to kill. As I told you before, the son, being in his
own house, he did not have to retreat. Before a man kills
his fellow, he must get out of the way; he must do every-
thing to avoid that final tragedy, unless he be in his own
house, and then he can stand his ground, and if the assailant
comes upon him, he may stand and strike. *Now, if this
plea is made out, write a verdict of not guilty. The son
has made the plea, he has set it up as a shield between him
and the penalties of the law, and he must prove it. He must
satisfy you by a preponderance of the testimony that the
thing is as he pleads it, or he must do it by so strong a proof
as to raise in your minds a reasonable doubt about his guilt.*
If you sustain the plea, find the son is excusable, say 'not
guilty.' If you are unable to do that, if the testimony of the
witnesses leads you to the sure conclusion that the son was
without right in what he did, then you go one step further
and inquire about the character of the killing.

"As you heard me tell a jury yesterday, there are two
unlawful killings: one is called murder, and the other is
called manslaughter. If one man kills another out of a
malicious heart, it is murder. *And a malicious heart, Mr.
Foreman and gentlemen, is a heart that is full of sin; that
is wrong with God and man. Malice—the law books pic-
ture it black. Artists have tried to draw it—the picture of
the human heart—and they picture the malicious heart in
black, and they picture a lawful heart in white. You have*

*got to judge of a man's heart by what he says and does, and by what you know of him, and what you know of yourselves, and what you know of human passion and human conduct.* If the testimony in this case satisfies you that this man killed his father, killed him wrongfully, and killed him out of a malicious heart, you ought to say so. If the testimony leaves you in reasonable doubt about that, you ought to say so, and give him the benefit of it. The State charges it is done in malice, and the State must prove it beyond a reasonable doubt. If the testimony surely satisfies you that the killing was in malice, say 'guilty,' and the penalty is death, unless you recommend him to mercy, and then it is lifetime imprisonment. But if the testimony leaves you *in painful doubt* on that subject, in what the law calls a reasonable doubt, about the purpose or intent of the party when he struck the blow, then you make one further inquiry.

"The other unlawful killing is called manslaughter. It exists where two men get into a fight; where one assaults the other; where the one assaulted becomes hot in passion; where he looses the grip upon himself, and in a moment of passion, he strikes and kills his assailant. That is manslaughter, and the penalty for that is imprisonment not less than two nor more than thirty years, in the discretion of the Court.

"Now, the reasonable doubt, gentlemen, and I am done. This man is charged with a grave crime, and the object of trials is to exclude all uncertainty as much as it is within the power of mortal man to do, and the mandate of the law is, if you have a reasonable doubt about his guilt, if the testimony leaves you wavering and uncertain, *in painful anxiety,* as to what the truth is, in that case you write a verdict of not guilty. If the testimony leads you to the certain and sure conviction that this man has violated the law, and that he has the blood of his father upon his hands without legal excuse, it is likewise your duty to say so. You may say 'guilty,' and that means the defendant shall die upon the

gallows. You may say 'guilty with recommendation to mercy,' and that means he shall be confined in the penitentiary all his days. You may say 'guilty of manslaughter;' that means he shall be imprisoned for a series of years, not less than two nor more than thirty, and you may say 'not guilty.' Take the record, gentlemen, and find a verdict."

The first exception assigns error in that, throughout the charge, his Honor dwelt upon the social and moral aspect of the offense with which defendant was charged, and continually spoke of the parties to the fatal encounter in the social and moral relation of father and son, instead of in the legal relation of deceased and defendant, thereby impressing upon the mind of the jury the idea that a son who had killed his father was not to be tried by the same rules of law and evidence that govern in the trial of other cases of homicide. The charge shows that the deceased and defendant were referred to throughout as father and son. Such a reference to the parties, though in accordance with the facts, was, nevertheless, unfortunate. While it may not have had any weight with the jury, it may have impressed upon them the idea that a son was not entitled in law to the same right of defending himself against an unlawful attack of his father as against that of any other person. The law is no respector of persons. Whatever we may say or think as to the social and moral aspect of the case, the law gives a son the same right to defend himself against the unlawful and deadly assault of his father that it does to defend himself against the unlawful and deadly attack of any other person. In such a case, the son is entitled to be tried by the legal rather than by the social and moral standard. We cannot say that the charge, in its general scope and tone, did not impress upon the jury an erroneous idea that the defendant did not have the right to defend himself against an unlawful assault made upon him by his father, just as if it had been made by any other person.

16—91

The next exception is that the charge limited defendant's defenses to that of self-defense, and eliminated the plea of accidental killing. It appears from the charge that this exception is not well taken.

The third and fourth exceptions question the correctness of the charge as to the use by defendant of opprobrious language which may have brought on the difficulty. The first part of the charge complained of was not in strict accord with the rule laid down in *Rowell's case,* 75 S. C. 510, 56 S. E. 23, but the slight variance in stating the rule was immediately afterwards corrected by saying that the language used must be such as might reasonably be expected to bring on a difficulty, and actually result in bringing on the difficulty. We are satisfied that no prejudice resulted to defendant from the language complained of. It is contended, however, by defendant that the rule must be limited to opprobrious language used towards the deceased himself, and not to a third person in his presence. We cannot accept this view. Opprobrious or insulting language directed to a man's wife or daughter, or to some other person in his care and under his protection, in his presence might and probably would provoke a difficulty even more quickly than if directed to himself; and the person who used it might reasonably expect that it would, and therefore he would be at fault in bringing on the difficulty. These exceptions also seek to make a distinction between the word "difficulty," which is used in the charge, and the words "physical encounter," which are used in the Rowell case. The distinction is unsubstantial and without merit.

The contention of the fifth exception that the language used was not so opprobrious that it might have reasonably been expected to bring on a difficulty cannot be sustained, for that is a question of fact, which was properly submitted to the jury. Language which might, under some circumstances and between some persons, be passed without expecting a difficulty, should under other

circumstances and between other persons, be reasonably expected to result in a physical encounter. Whether it should or should not is ordinarily a question of fact for the jury.

It is unfortunate that his Honor departed from the time-honored and approved definitions of a reasonable doubt. This Court has defined it to be a strong, well-founded and substantial doubt, arising in and growing out of the testimony in the case. It is, therefore, a doubt founded in reason and one for which a good reason can be given. Therefore, a reasonable doubt cannot be said to be a "painful doubt" or one which leaves the mind in a state of "painful anxiety." An individual whose mind is excessively susceptible or abnormally sensitive might be in a state of "painful anxiety" about a matter, when an ordinarily sensible person would not hesitate, or have any reason to doubt the truth of the matter.

His Honor was likewise unfortunate in departing from the approved and well understood legal definitions of malice. It is well for the trial Judge to point out to the jury the difference between the popular and the legal meaning of the word. But a man's heart may be full of sin. It may be wrong with God and man. It may be what some artists would depict as black. Yet, unless it prompts "the wilful or intentional doing of a wrongful act, without just cause or excuse," it is not a legally malicious heart. But the error in defining malice is not ground for reversal, because the defendant was convicted of manslaughter only, and the jury must have found that the killing was not done in malice.

The next exception assigns error in the charge that the jury must judge of a man's heart "by what you know of him, and what you know of yourselves, and what you know of human passion and human conduct." Fairly construed, we do not think the language of the Judge conveyed or was intended to convey the idea that the

jury should judge of the defendant's heart by what they individually and personally knew of him, without regard to the evidence, which is the error assigned. Taken in connection with the context, it conveyed the idea that the jury were to judge the defendant's heart by his language and conduct, by what they knew of him from the evidence, and by their own observation and experience of human passions and conduct, and that is the test which is universally applied in determining the motive of human action.

The last exception assigns error in charging that the defendant must prove his plea or defense by the preponderance of the evidence. That charge would have been correct, if we could safely say that it was understood and applied by the jury only to the plea of self-defense. But, considering the charge as a whole, we cannot satisfactorily conclude that the jury may not have understood from it that the defendant must also prove the plea that the killing was accidental by the preponderance of the evidence. The plea of accidental homicide, if indeed, it can properly be called a plea, is certainly not an affirmative defense, and, therefore, does not impose the burden of proof upon the defendant; because the State cannot ask for a conviction, unless it proves that the killing was done with criminal intent. *State* v. *McDaniel,* 68 S. C. 304, 47 S. E. 384. Turning to the charge, it will be seen that his Honor spoke of the plea of accidental killing in the same connection with the plea of self-defense, and at the conclusion of his remarks upon that subject, he instructed the jury: "Now, if this plea is made out, write a verdict of not guilty. * * * He (the defendant) must satisfy you by the preponderance of the testimony that the thing is as he pleads it." Taking the charge on this subject as a whole, the jury may have concluded that the burden was upon defendant to prove that the killing was accidental, which is not the law.

Judgment reversed.