23002

The STATE, Respondent v. Perry Bush SMITH, Appellant.

(379 S. E. (2d) 287)

Supreme Court

*W. Gaston Fairey,* of *Fairey & Parise, P.A.,* and *S. C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Amie L. Clifford,* Columbia; and *Sol. Donald V. Myers,* Lexington, *for respondent.*

Heard Feb. 9, 1989.

Decided April 24, 1989.

HARWELL, Justice:

Appellant was convicted of murder and assault and battery with intent to kill. He appeals the trial court's denial of a directed verdict for acquittal by reason of insanity. We affirm.

## FACTS

On the morning of Friday, August 19, 1983, Appellant Perry Bush ("P.B.") Smith entered the Johnston Post Office carrying a shotgun. In the fracas which followed, Smith shot four people. He killed Postmaster Charles McGee and injured postal employees Allen Thomas and Monroe Kneece, and police officer Robert Carroll.

Several witnesses testified as to the events of the shooting. The combined testimony of the witnesses established the following: Appellant entered the post office carrying a shotgun and told everyone inside not to move. Postal employee Jo Gibson ran from the post office, followed by appellant. After appellant left the building, Postmaster McGee locked the back door and told everyone to get out. McGee then followed appellant yelling "P.B., don't do it." Everyone left the post office except postal employee Monroe Kneece. Kneece went to check the door through which appellant had exited. As Kneece stood behind the door, appellant fired two shots through the door, injuring Kneece's face and right eye.

Meanwhile, Jo Gibson had stopped an off-duty police officer, Robert Carroll, who was driving through the adjacent Pantry Convenience Store parking lot. She told him what was happening; he got out of his car and told her to drive his car to the police station to get help.

As Officer Carroll approached the side of the post office, he saw people running in all directions. He heard a shot; someone shouted that appellant was out front. As Officer Carroll walked back around the side of the building, he saw appellant shoot postal worker Allen Thomas, who was running from the post office.

Officer Carroll shouted for appellant to drop his weapon. As appellant continued to walk, Carroll attempted to fire at appellant; however, Carroll's gun misfired and appellant turned and shot him.

Appellant then entered the Pantry Convenience Store. Postmaster McGee and two Pantry employees were hiding in the storage area of the store. Appellant kicked down the door and told McGee "I told you you son-of-a-bitch I'd get even." He then shot McGee, who fell to the ground; he again told McGee that he was going to get even and shot him a second time.

Appellant then exited the Pantry, where he was approached by a wounded Officer Carroll. Appellant dropped his gun and was handcuffed; he apologized to Carroll for shooting him, telling him that he had not recognized that it was Carroll. As appellant sat handcuffed on the sidewalk, postal employee Albert Turner walked by, and appellant told him: "You better be glad Jo [Gibson] ran because you were next."

Appellant was then taken to the Johnston jail and from there he was transferred to another jail facility. Appellant was charged with three counts of assault and battery with intent to kill and one count of murder.

On October 2, 1983, the Circuit Court held a competency hearing and found that appellant was incompetent and ordered his commitment to the South Carolina Department of Mental Health until he was found competent to stand trial. On May 3, 1985, the South Carolina State Hospital declared appellant competent to stand trial. In a June 13, 1985 Order, the circuit court gave judicial recognition to the State Hospital's competency determination.

Appellant was first tried and convicted in June of 1986, but this Court reversed and remanded for a new trial.[1] Upon remand, the case resulted in a mistrial.

A third trial was held on November 9-11, 1987 and appellant was found guilty of one count of murder and one count of assault and battery with intent to kill. He was sentenced to life for the murder plus ten years for the assault and battery with intent to kill. This appeal follows.

## DISCUSSION

Appellant argues that the trial court erred in failing to direct a verdict of not guilty by reason of insanity because appellant overwhelmingly established that he was insane at the time of the shooting.

A criminal defendant is presumed to be sane; the State does not have to prove sanity. *State v. Milian-Hernandez*, 287 S. C. 183, 336 S. E. (2d) 476, 477 (1985); *State v. Livingston*, 233 S. C. 400, 105 S. E. (2d) 73, 79 (1958). However, when a defendant offers evidence of insanity, the State no longer enjoys the presumption, but must present evidence to the jury from which the jury could find the defendant sane. *State v. Milian-Hernandez*, 336 S. E. (2d) at 477. If the contention of insanity is suggested, the State may present evidence of sanity in its case-in-chief rather than waiting to do so during its case in reply. *State v. Livingston*, 105 S. E. (2d) at 79. Even though a defendant presents expert testimony, the State is not required to also produce expert testimony; lay testimony may be sufficient.

In this case, appellant presented evidence of his insanity. Psychiatric experts, Dr. Harold Morgan and Dr. John Billinsky, both specialists in forensic psychiatry, testified that appellant was suffering from a mental problem known as a delusional disorder, specifically, persecutory delusion. The experts testified that this psychotic disorder caused appellant to feel that "at [the time of the shooting] he was being persecuted by certain people." They further testified that this delusion involves "a total conviction that something is true which is obviously not true." One characteristic of the disorder is that the mental illness is encapsulated and "within that capsule [those affected] will have all these false beliefs ... but apart from that ... may seem perfectly normal...." Persons who suffer from this disorder appear quite normal unless approached about the subject of their delusion. As the disease progresses, the delusional aspect which may have initially been directed toward one individual tends to spread to others whom the patient feels are siding with his perceived adversary.

To prove appellant's sanity, the State relied on testimony from four reply witnesses as well as testimony elicited during its case-in-chief. The first reply witness was Dr. Richard Steadman, appellant's personal physician, who testified that he had treated appellant in his office in March, 1983. In Steadman's opinion, appellant did not appear to be psychotic during his visit.

Johnston Chief of Police Charles Waldrop testified that he had known appellant for fifteen years and that he saw him several times the day of the shooting after the incident occurred. Waldrop testified that appellant acted normal, and in his opinion was not insane on that day.

Officer Jerry Gambrell, who transported appellant the day of the shootings, testified that appellant appeared normal to him, although he did not discuss the post office incident with appellant.

A mail carrier who delivered mail to appellant the day before the shootings testified that he and appellant discussed the post office. In fact, they specifically discussed Postmaster McGee's plans to leave Johnston for a new post. The carrier testified that appellant exhibited no signs of abnormal behavior.

Appellant's contention that the State failed to present evidence of his sanity is without merit. In addition to the testimony of the above-listed witnesses as to appellant's mental state, other evidence tended to establish appellant's sanity. For example, certain words and actions of appellant were inconsistent with the symptoms of the illness as outlined by the expert witnesses. For example, the experts testified that persons who suffer from appellant's alleged illness appear quite normal unless approached about the subject of their delusion. The day prior to the shooting, however, appellant spoke at length with a mail carrier about the post office, specifically Postmaster McGee, yet the mail carrier testified that appellant exhibited no signs of abnormal behavior. Finally, appellant's remarks to Postmaster McGee ("I told you ... I'd get even") and to Albert Turner ("You better be glad Jo ran because you were next") were arguably inconsistent with the characteristic of fear associated with the disorder.

The evidence of appellant's sanity was sufficient to create an issue for the jury. The weight to be accorded this evidence and the conclusion to be drawn from this evidence was for the jury to decide. We hold that the judge properly sent the case to the jury.

Affirmed.

GREGORY, C. J., FINNEY and TOAL, JJ., and LITTLEJOHN, Acting J., concur.