697 S.E.2d 681

**The STATE, Respondent,**

v.

**Perry Keith STRICKLAND, Appellant.**

**No. 4714.**

Court of Appeals of South Carolina.

Heard June 8, 2010.
Decided July 21, 2010.
Rehearing Denied Aug. 27, 2010.

Chief Appellate Defender Robert M. Dudek, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General

Deborah R.J. Shupe, all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

SHORT, J.

Perry Keith Strickland (Appellant) appeals his convictions for voluntary manslaughter and assault and battery of a high and aggravated nature (ABHAN), arguing the trial court erred in denying his directed verdict motion. We affirm.

## FACTS

Appellant was indicted on murder and ABHAN. These charges arose after Appellant became involved in a knife fight with William Huckabee (Father), and his son, Christopher Huckabee (Victim), in Spartanburg County, South Carolina. Victim died as a result of the altercation. Three witnesses testified about what occurred: Father; Appellant's common law wife, Jennifer Weathers (Wife); and a neighbor, Barry Smith (Neighbor). Each gave a different account of what occurred.

Father testified that on the morning of the incident, Wife arrived at his trailer asking for a place to rest because Appellant had kicked her out of their trailer after an argument. Father agreed and allowed Wife to sleep on his sofa. While Wife rested, Father went to a store to purchase beer and cigarettes. Upon returning, he asked Wife to leave, which she did.

Later that night, Father, Victim, Neighbor, and Wife were at Father's trailer socializing when Appellant returned to the trailer for the third or fourth time. Neighbor and Wife were sitting on a sofa, and Appellant joined them. Appellant angrily demanded the key to their trailer from Wife. Wife denied having a key, and Appellant responded by yelling and screaming at her. Victim, who was sitting nearby, told Appellant, "I'm not going have this in my daddy's house." Appellant told Victim to "shut your fucking mouth." Victim pushed his chair back and was getting up when Father attacked Appellant.

Father hit Appellant, who fell to the couch. Father landed on the floor, and Victim asked him if he was all right. After that, Father passed out. When Father awoke, he was behind

Appellant and saw Appellant kneeling over Victim. Father attacked Appellant again. The next recollection Father had was finding Victim dead.

Wife testified that on the morning of the incident she did not go to Father's trailer, but went to her grandmother's house after she and Appellant had a fight. Upon returning, she and Appellant cleaned a neighbor's yard. Father or Victim had invited Wife and Appellant to socialize at Father's trailer. Later that night, Wife went to Father's trailer, and Appellant arrived fifteen to twenty minutes later.

Wife said she was seated on the couch when Appellant came in and politely asked her for the key to their trailer. Before she could respond, Victim attacked Appellant and Father joined the fight. Victim and Father were armed with knives. The three men ended up on the floor, and Wife observed Appellant get cut with a knife. After the fight, Wife and Appellant left Father's trailer.

Officer Allen Wood, of the Spartanburg County Sheriff's Office, testified Wife's testimony conflicted with a statement she gave to the police a few hours after the incident. In that statement, she stated Appellant came into Father's trailer and said, "Where the fuck is my door key[?]" The statement also indicated that after this exchange between Appellant and Wife, Victim told Appellant to "get the fuck out of my house." According to Wife's statement, Victim punched Appellant in the face, and Appellant responded in kind. Father jumped into the fight after Victim and Appellant exchanged blows.

After this testimony, Appellant moved for a directed verdict, arguing he was entitled to act in self-defense. The trial court denied this motion. Appellant then presented the testimony of Neighbor.

Neighbor lived in the same trailer park as Appellant and Father. Neighbor testified he arrived at Father's trailer the night of the incident to find Father present. Wife arrived at the trailer, and thereafter, Victim appeared. Appellant arrived and knocked on the door, and Victim answered. Appellant addressed Wife and asked for the key to their trailer. Appellant was outside of the trailer, and Victim was standing in the doorway. The two stared each other down, then Victim made a move and a fight ensued. The two landed inside the

trailer, and Father joined the fight. Victim pulled out a knife and kicked Appellant. At this point, Neighbor exited the trailer and did not witness anything else.

After the close of the evidence, Appellant again moved for a directed verdict, arguing he acted in self-defense. The trial court denied his motion. The jury found Appellant guilty of voluntary manslaughter and ABHAN, and the court sentenced him to concurrent terms of twelve and ten years' imprisonment, respectively. This appeal followed.

## STANDARD OF REVIEW

In deciding whether the trial court erred in failing to grant a directed verdict in favor of a defendant in a criminal case, this court must view the evidence in the light most favorable to the State. *State v. Hendrix*, 270 S.C. 653, 657, 244 S.E.2d 503, 505 (1978). If there is any evidence, direct or circumstantial, which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced, the trial court must submit the case to the jury. *Id.* Additionally, unless it can be said as a matter of law that self-defense was established, it was not error for the trial court to submit the case to the jury. *Id.* If the State provides evidence sufficient to negate a defendant's claim of self-defense, a motion for directed verdict should be denied. *State v. Dickey*, 380 S.C. 384, 394, 669 S.E.2d 917, 922 (Ct.App.2008).

## LAW/ANALYSIS

Appellant argues the trial court erred in denying his directed verdict motion because he established self-defense as a matter of law. We disagree.

To establish self-defense, four elements must be present: (1) the defendant must be without fault in bringing on the difficulty; (2) the defendant must have been in actual imminent danger of losing his life or sustaining serious bodily injury, or he must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) if his defense is based upon his belief of imminent danger, a reasonably prudent man of ordinary firmness and courage would have entertained the same belief, if the defendant was

actually in imminent danger, the circumstances were such as would warrant a man of ordinary prudence, firmness and courage to strike the fatal blow in order to save himself from serious bodily harm or losing his own life; and (4) the defendant had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily injury than to act as he did in the particular instance. *Hendrix,* 270 S.C. at 657–58, 244 S.E.2d at 505–06.

■ As to the first element, Appellant was not without fault in bringing on the difficulty. "The true rule is that the plea of self-defense is not available to one who uses language so opprobrious that a reasonable man would expect it to bring on a physical encounter, and which did actually contribute to bringing it on." *State v. Woodham,* 162 S.C. 492, 502, 160 S.E. 885, 889 (1931) (internal quotations omitted). Additionally, the question of whether the language used was opprobrious enough as to have reasonably been expected to bring on a difficulty is ordinarily a question of fact for the jury. *State v. Ferguson,* 91 S.C. 235, 242–43, 74 S.E. 502, 505 (1912).

■ Although the three witnesses presented differing accounts of the incident, Father testified he struck Appellant after Appellant told Victim to "shut your fucking mouth." We believe whether this language might reasonably have been expected to bring on the difficulty was a question for the jury. *See id.* (holding whether defendant's calling his mother a "damn lie" might reasonably have been expected to bring on the difficulty was a jury question in a prosecution for killing his father).

While we acknowledge that Wife testified Appellant came in and politely asked for the key to their trailer and did not address Victim, Father's contrary testimony created an issue of credibility and, at least, created a situation where the State produced enough evidence to survive a directed verdict motion. *See Hendrix,* 270 S.C. at 657, 244 S.E.2d at 505 (holding if there is any evidence, direct or circumstantial, which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced, the trial court must submit the case to the jury); *see also State v. Pitts,* 256 S.C. 420, 427, 182 S.E.2d 738, 742 (1971) (stating a motion for a directed verdict of acquittal is properly refused where the

determination of guilt is dependent upon the credibility of a witness, as this is a question that goes to the weight of evidence and is clearly for determination by a jury). For these reasons we find the trial court properly submitted the case to the jury.

## CONCLUSION

Accordingly, the trial court's decision is

**AFFIRMED.**

HUFF and WILLIAMS, JJ., concur.