722 S.E.2d 233

**The STATE, Respondent,**

v.

**Bradley Scott SENTER, Appellant.**

**No. 4924.**

Court of Appeals of South Carolina.

Heard Nov. 17, 2011.
Decided Dec. 21, 2011.
Rehearing Denied Feb. 24, 2012.

548

Appeal from Horry County; Michael G. Nettles, Circuit Court Judge.

Appellate Defenders Dayne C. Phillips and M. Celia Robinson, of Columbia, for appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Christina Catoe, all of Columbia; and John Gregory Hembree, of Conway, for respondent.

LOCKEMY, J.

Bradley Senter appeals his convictions of assault and battery with intent to kill (ABWIK) and criminal domestic violence of a high and aggravated nature (CDVHAN). Senter argues the trial court erred in (1) denying his directed verdict and new trial motions and (2) denying his request to waive his right to a jury trial. We affirm.

## FACTS/PROCEDURAL BACKGROUND

On November 13, 2006, Senter shot his estranged wife, Dena Senter Lester (the Victim), inside his home.[1] The Victim escaped and, after unsuccessfully trying to alert a neighbor, collapsed in the front yard. According to the Victim, Senter grabbed her by the arms, dragged her to a

---

1. Senter asked the Victim to come to his home the morning of November 13, 2006, to pick up signed divorce papers and give him a haircut.

secluded area in the yard, and told her, "Oh no, you're not going to be out here where somebody will find you." The Victim then used the panic button on her car remote to set off her car alarm. When Senter left the Victim to shut off the alarm, she again ran to a neighbor's house for help. After receiving no answer, the Victim returned to the spot where Senter moved her and "played dead." Senter returned to the Victim and, after inspecting her wound, went inside the house. The Victim then ran toward the sound of a tractor on an adjacent golf course. Joseph Estock, the tractor driver, called 911 while the Victim hid behind the tractor. While Estock was on the phone with 911, Senter appeared on the golf course. According to Estock, Senter told him to "hang up the phone now, turn around, and start walking. You don't know what she did to me." After Estock left, Senter stood over the Victim and mocked her religious beliefs and threatened to shoot her and himself before walking away. Thereafter, police arrived and Senter was taken into custody. The Victim was airlifted to the hospital where she was treated for a collapsed lung and broken ribs, and underwent surgery to remove the bullet from her liver.

On January 25, 2007, Senter was indicted by the Horry County Grand Jury for ABWIK and CDVHAN. After denying Senter's request to waive his right to a jury trial, the trial court found Senter was competent to stand trial.[2] At trial, Senter did not deny he shot the Victim; however, defense counsel argued Senter suffered from a mental illness and didn't understand or have control over his conduct. The Victim, in addition to Senter's mother and sister, testified Senter believed his family members were conspiring with the FBI to have charges brought against him. Additionally, two doctors diagnosed Senter with delusional disorder and determined he had a fixed, false belief that the FBI was trying to destroy his life. Senter was voluntarily hospitalized to treat his mental illness three times between January and March 2005.

---

2. Defense counsel informed the trial court Senter was found competent to stand trial by the Department of Mental Health, and stated the defense had "no reason to believe" Senter was not competent to stand trial.

At the close of the State's case, defense counsel moved for a directed verdict as to both the ABWIK and CDVHAN charges. Defense counsel argued there was no evidence Senter intended to kill the victim. The trial court denied the motion, finding a specific intent to kill was not an element of ABWIK. Following the presentation of its case, the defense renewed its motion for a directed verdict and again argued there was no evidence Senter intended to kill the victim. Additionally, defense counsel asked the trial court to direct a verdict of not guilty by reason of insanity. The trial court took the motion under advisement. Following testimony from the State's reply witnesses, the trial court denied Senter's motion for a directed verdict.

On June 5, 2008, the jury found Senter guilty of ABWIK and CDVHAN. On June 20, 2008, the trial court denied Senter's post-trial motion for a new trial. The trial court found there was "no question that [Senter] was mentally ill;" however, the court stated it was not in a position to substitute its judgment for that of the jury. The trial court noted a reasonable jury could conclude Senter was sane and capable of "conform[ing] his conduct to the law." Thereafter, the trial court sentenced Senter to twenty years' imprisonment.[3] This appeal followed.

## ISSUES ON APPEAL

1. Did the trial court err in denying Senter's directed verdict and new trial motions?

2. Did the trial court err in denying Senter's request to waive his right to a jury trial?

## STANDARD OF REVIEW

█ In criminal cases, appellate courts review errors of law only and are bound by the trial court's factual findings unless they are clearly erroneous. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006).

---

3. This sentence consisted of ten years on the CDVHAN conviction and ten years consecutive on the ABWIK conviction.

## LAW/ANALYSIS

### I. Directed Verdict and New Trial Motions

Senter argues the trial court erred in denying his directed verdict and new trial motions because there was no substantial evidence of sanity. We disagree.

When reviewing the denial of a motion for a directed verdict, an appellate court must review the evidence, and all inferences therefrom, in the light most favorable to the State. *State v. Strickland,* 389 S.C. 210, 214, 697 S.E.2d 681, 683 (Ct.App.2010). "If there is any evidence, direct or circumstantial, which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced, the appellate court must find the case was properly submitted to the jury." *Id.* "The decision whether to grant a new trial rests within the sound discretion of the trial court, and [the appellate court] will not disturb the trial court's decision absent an abuse of discretion." *State v. Mercer,* 381 S.C. 149, 166, 672 S.E.2d 556, 565 (2009).

A defendant is insane if, "at the time of the commission of the act constituting the offense, [he], as a result of mental disease or defect, lacked the capacity to distinguish moral or legal right from moral or legal wrong or to recognize the particular act charged as morally or legally wrong." S.C.Code Ann. § 17–24–10(A) (2003). "[T]he key to insanity is 'the power of the defendant to distinguish right from wrong in the act itself—to recognize the act complained of is either morally or legally wrong'." *State v. Lewis,* 328 S.C. 273, 278, 494 S.E.2d 115, 117 (1997) (quoting *State v. Wilson,* 306 S.C. 498, 506, 413 S.E.2d 19, 23 (1992)). "A criminal defendant is presumed to be sane; the State does not have to prove sanity." *State v. Smith,* 298 S.C. 205, 208, 379 S.E.2d 287, 288 (1989). "However, when a defendant offers evidence of insanity, the State no longer enjoys the presumption, but must present evidence to the jury from which the jury could find the defendant sane." *Id.* "Even though a defendant presents expert testimony, the State is not required to also produce expert testimony; lay testimony may be sufficient." *Id.*

At trial, Senter presented evidence of his insanity. Lisa Cleary, Senter's sister, testified Senter told her the "FBI was

corrupt" and had "orchestrated his whole life and that they were the reason for his failures." According to Cleary, Senter also told her that her sixteen-year-old daughter was involved with the FBI. Cleary further testified she took Senter to two mental health facilities for evaluation, brought him to Duke University for medical testing, and paid for counseling.

Dr. Marla Domino, a court appointed psychologist with the South Carolina Department of Mental Health, testified Senter suffered from delusional disorder. She found Senter's mental illness manifested in a false, fixed belief that "the FBI was out to get him" and that the FBI had fabricated his wife's shooting to "destroy his life." Dr. Domino further testified that "because of his delusional disorder," Senter "did not know right from wrong at the time of the incident," and therefore, he was not criminally responsible for the shooting.

Cathy Battle, a professional counselor, testified she referred Senter to another counselor with a psychiatric background and recommended he enter an inpatient facility after he discussed his recurring suspicions and fears about the FBI during their session.

Dr. Rikki Halavonich, director of the psychiatry department at the Medical University of South Carolina, diagnosed Senter with delusional disorder, persecutory type and opined that Senter's mental illness "affected his thinking on that day as well as for at least a couple of years prior to that to the point that he did not appreciate moral and/or legal right from moral and/or legal wrong." Dr. Halavonich also testified that, in her opinion, Senter was not criminally responsible for the shooting.

To prove Senter's sanity, the State relied on testimony from several witnesses. Susan Vonspreckelsen, the Victim's neighbor, testified Senter came to her home the morning of the shooting looking for the Victim. According to Vonspreckelsen, when she told Senter the Victim was not there he asked to come inside and look around. She said Senter "seemed calm" and "a little intense, but no different than usual." In addition, Estock, the golf course tractor driver, testified Senter had a serious look on his face but he "wasn't really agitated" when he approached him on the golf course. Estock

testified Senter told him in a "calm voice" to hang up the phone and walk away.

We find Senter's contention that the State failed to present evidence of his sanity is without merit. In addition to the testimony of the above-listed witnesses as to Senter's mental state on the day of the shooting, other evidence tended to establish Senter planned to harm the Victim and knew his conduct was wrong. For example, in the months leading up to the shooting, Senter endorsed all of the property settlement checks he received from the Victim with the statement: "Will be paid regardless of any medical, arrest, or any other event." Senter also refused to meet the Victim in a public place to exchange divorce papers, and insisted she come to his home. In addition, Senter moved the Victim from public view after she collapsed in his front yard, retrieved the spent shell casing after the shooting, and disabled the car alarm. We believe the jury could have determined these actions indicated Senter planned to shoot the Victim and knew his actions were wrong. Thus, we find the evidence of Senter's sanity was sufficient to create an issue for the jury. The weight to be accorded this evidence and the conclusion to be drawn from this evidence was for the jury to decide. For these reasons, we find the trial court properly submitted the case to the jury.

## II. Jury Trial Waiver

█ Senter argues the trial court erred in denying his request to waive his right to a jury trial. This argument is not preserved for our review.

█ First, we note "there is no federally recognized right to a criminal trial before a judge sitting alone." *Singer v. U.S.*, 380 U.S. 24, 34, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965). "A defendant's only constitutional right concerning the method of trial is to an impartial trial by jury." *Id.* at 36, 85 S.Ct. at 790. There is "no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury—the very thing that the Constitution guarantees him." *Id.*

After jury selection, but prior to the commencement of trial, Senter waived his right to a jury trial. The State objected to Senter's waiver, arguing he did not have the State's consent pursuant to Rule 14(b), SCRCrimP.[4] Defense counsel argued Rule 14(b), SCRCrimP, was unconstitutional and deprived Senter of his right to waive a jury trial. The trial court denied Senter's request to waive his right to a jury trial.

On appeal, Senter argues the trial court's ruling violated his rights to due process and the effective presentation of a defense. Specifically, Senter maintains the "expert testimony and psychiatric theory" presented at trial "were too difficult for a lay jury to deal with fairly." Senter argues he has the right to present a defense that can be comprehended, understood, and fairly considered. Because Senter failed to raise this argument to the trial court, it is not preserved for our review. *See State v. Carmack*, 388 S.C. 190, 200, 694 S.E.2d 224, 229 (Ct.App.2010) (holding arguments must be raised to and ruled upon by the trial court to be preserved for appellate review). Senter also argues the trial court erred in failing to find Rule 14(b), SCRCrimP, was unconstitutional. Senter failed to cite any authority to support this argument. Accordingly, we find it is abandoned. *See State v. Jones*, 392 S.C. 647, 655, 709 S.E.2d 696, 700 (Ct.App.2011) (holding "short, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review").

## CONCLUSION

For the foregoing reasons, the decision of the trial court is hereby

**AFFIRMED.**

HUFF and PIEPER, JJ., concur.

---

4. Pursuant to Rule 14(b), SCRCrimP, "[a] defendant may waive his right to a jury trial only with the approval of the solicitor and the trial judge."