731 S.E.2d 889

**The STATE, Respondent,**

v.

**Bennie MITCHELL, Appellant.**

No. 5009.

Court of Appeals of South Carolina.

Heard April 25, 2012.

Decided July 25, 2012.

412

Appellate Defender LaNelle C. DuRant, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Assistant Deputy Attorney General Deborah R.J. Shupe, all of Columbia; and Solicitor Jerry W. Peace, of Greenwood, for the State.

LOCKEMY, J.

In this criminal action, Bennie Mitchell argues the trial court erred in: (1) allowing a police officer to identify Mitchell from photographs taken by the victim's deer camera because it was in violation of Rule 403, SCRE, and Rule 701, SCRE; (2) admitting a disk containing photographs from a deer camera because it was in violation of Rules 1001, 1002, and 1003, SCRE; and (3) failing to grant Mitchell's post-trial

motion for a new trial on the first-degree burglary charge when all of the elements of the charge were not met. We affirm the trial court.

## FACTS

In the early morning of October 28, 2008, Stephen Potts returned to his home in Newberry County and discovered someone had broken into his home during his absence. After reviewing a motion-activated deer camera that had been placed on top of his refrigerator, Potts saw photographs of a man in his kitchen. A police officer subsequently identified the man in the photographs as Mitchell.

In January 2009, the Newberry County Grand Jury (Grand Jury) indicted Mitchell on one count of first-degree burglary, one count of possession of burglary tools, and one count of enhancement of larceny.[1] In February 2010, the Grand Jury also indicted Mitchell on one count of petit larceny. The matter was called for a jury trial on April 19, 2010.

In a pre-trial hearing, Mitchell moved to require the State to establish the authenticity and foundation of the photographs from Potts's deer camera. The trial court denied his request but indicated Mitchell could object at the appropriate time during the trial.

Additionally, Mitchell moved to exclude testimony from Lieutenant (Lt.) Roy McClurkin, of the Newberry Police Department, regarding Lt. McClurkin's identification of Mitchell as the person in the photographs from Potts's deer camera. He objected on several grounds: (1) the testimony was a lay opinion; (2) the jury could determine whether Mitchell was the person in the photographs without Lt. McClurkin's testimony; and (3) the testimony would be unduly prejudicial because of Lt. McClurkin's position as a police officer. The trial court denied his motion, finding the proposed testimony met the requirements for admissibility under Rule 701, SCRE. The trial court further found the testimony's probative value outweighed any prejudice to Mitchell, but it excluded similar testimony from other police officers as cumulative and prejudicial.

---

1. The enhancement of larceny indictment was nolle prossed on April 21, 2010.

Potts testified he lived in Newberry County in October 2008, and due to some break-ins at his home, he mounted a motion-activated deer camera on top of his refrigerator. Potts stated that upon returning home from work at approximately 1:00 a.m. on October 28, 2008, he noticed someone or something had tampered with the window next to his back door. After going inside his home and checking the deer camera, he discovered photographs of someone in his kitchen that he did not recognize. He waited to contact the police until around 10 a.m. and then told them of the photographs.

Mitchell objected to the admission of a disk containing the photographs from the deer camera, arguing it was not the "original" as required by the South Carolina Rules of Evidence and maintaining there was a genuine issue with the original's authenticity. Potts testified during the in camera hearing that he had possession of the deer camera from the time he returned home on the night of the alleged incident until he took it to his business and downloaded the data onto a laptop. He identified the photographs on the disk as the ones he downloaded directly from the camera. Potts stated the police officer viewed the photographs on his personal laptop at his home on October 28 but that laptop could not download the photographs to print them out. He then took the camera to the police station, but the police station was not able to download and print the photographs either. At that point, Potts took the deer camera back to his business where he downloaded the photographs and copied them onto a disk. The State argued that the deer camera photographs were meant to be downloaded and then printed out. It then analogized the deer camera to a regular film camera because when one takes a picture with a regular film camera, the original is on the film and then the person can get them developed to produce a copy of what came from the original. Thus, the State maintained the photographs fell under the definition of an original.

Potts admitted the pictures had a timestamp of 3:00 a.m., even though he testified he returned home from work around 1:00 or 1:30 a.m. He stated the clock was wrong on the deer camera because he had just set it up and had not properly programmed the clock feature yet.

The trial court overruled Mitchell's objection, finding the photographs on the disk were data stored in a computer put in a format readable by sight. Further, the photographs were the same as the ones on the deer camera based upon the foundation offered by the State. The trial court determined the photographs were "originals" as defined in Rule 1001, SCRE. Potts then testified before the jury regarding the photographs and stated he did not know the person pictured in them. Further, he testified that approximately one hundred dollars in quarters, some clothing, and some beer were taken from his home.

Corporal (Cpl.) Allison Moore of the Newberry Police Department testified she responded to Potts's residence on October 28, 2008. She stated Potts showed her the photographs on the deer camera, and she thought they depicted the unknown suspect well. Cpl. Moore could not determine where the person entered Potts's home and could not recover any fingerprints. When Potts came to the police station with the deer camera as requested, he met Cpl. Moore and they discovered the police station did not have the ability to download and print the photographs either. Potts informed Cpl. Moore that he could download the photographs at his place of business. She advised him to bring the photographs to the police department after he downloaded them, and he did so later that day on October 28.

Lt. McClurkin stated that Potts and Cpl. Moore came to his office with the disk on the afternoon of October 28, 2008, and asked him if he recognized the person in the photographs taken from Potts's deer camera. Lt. McClurkin testified, over Mitchell's objection, that he viewed the photographs from the disk on his office computer and recognized Mitchell as the person in the photographs. He stated that in one of the photographs, the person he believed to be Mitchell was standing with a flashlight and a bag in his hands. Lt. McClurkin explained he knew Mitchell from living in Newberry for over twenty years.

The jury convicted Mitchell of first-degree burglary and possession of burglary tools, but it acquitted him of the petit larceny charge. Mitchell moved for a new trial based on the ground that the State failed to establish all elements of the

burglary charge because the jury acquitted him of petit larceny. The trial court denied his motion, and this appeal followed.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, an appellate court is bound by the trial court's factual findings unless they are clearly erroneous. *Id.*

## LAW/ANALYSIS

### I. Identification of Mitchell

■ Mitchell contends it was reversible error to allow Lt. McClurkin to identify Mitchell at trial from photographs taken from the deer camera because it was in violation of Rule 701, SCRE, and Rule 403, SCRE. Specifically, Mitchell argues Lt. McClurkin was not an eyewitness to the burglary; therefore, his identification of Mitchell from the photographs from the disk was simply his opinion of what was on the video. Further, Mitchell states the jury could observe the photographs themselves and draw their own conclusion as to identity. We disagree.

■ " 'The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice.' " *State v. Fripp,* 396 S.C. 434, 438, 721 S.E.2d 465, 467 (Ct.App.2012) (quoting *State v. Douglas,* 369 S.C. 424, 429, 632 S.E.2d 845, 847–48 (2006)). "Rule 701 of the South Carolina Rules of Evidence explains when lay witness testimony is admissible." *Id.* at 439, 721 S.E.2d at 467.

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which (a) are rationally based on the perception of the witness, (b) are helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) do not require special knowledge, skill, experience or training.

Rule 701, SCRE. " 'Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.' "

*Fripp,* 396 S.C. at 439, 721 S.E.2d at 467 (quoting Rule 704, SCRE).

Mitchell also argues the police officer's testimony violated Rule 403, SCRE, which states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Rule 403, SCRE.

Mitchell cites *State v. Herring,* 387 S.C. 201, 692 S.E.2d 490 (2009), in support of his argument that the police officer's identification was in violation of Rule 701, SCRE. However, in *Fripp* this court determined that two witnesses could testify to the identity of a person depicted on surveillance videotape. 396 S.C. at 438–40, 721 S.E.2d at 467–68. The defendant was charged with second-degree burglary after he was identified as the suspect in a burglary at a general store. *Id.* at 436–37, 721 S.E.2d at 466. The burglary took place around 4:00 a.m. with no one else present in the general store. *Id.* at 437, 721 S.E.2d at 466. An alarm triggered the police response, and the suspect's image was caught on the store's surveillance videotape. *Id.* In explaining how she was able to identify the suspect on the videotape as being the defendant, one witness, the store manager, indicated she knew the defendant "very well" and "saw him all the time." *Id.* at 437–38, 721 S.E.2d at 466. The second witness, a store employee, testified she was able to identify the defendant because she was acquainted with him through his family. *Id.* at 438, 721 S.E.2d at 466. This court found their testimony was "rationally based on their perceptions of Fripp's appearance including his physical appearance, mannerisms, and clothing." *Id.* at 439, 721 S.E.2d at 467. Additionally, this court concluded the two witnesses' opinions were helpful in determining a key fact in issue—"whether [the defendant] was the person depicted on the videotape." *Id.*

This court then proceeded to analyze federal authority construing the element of helpfulness in determining a key

fact in issue.[2]  *Id.* at 439–40, 721 S.E.2d at 467–68.  In *United States v. Allen,* 787 F.2d 933 (4th Cir.1986), *vacated on other grounds,* 479 U.S. 1077, 107 S.Ct. 1271, 94 L.Ed.2d 132 (1987), the court permitted identification testimony by witnesses based on surveillance photographs.  That court stated:

> We believe ... testimony by those who knew defendants over a period of time and in a variety of circumstances offers to the jury a perspective it could not acquire in its limited exposure to defendants.  Human features develop in the mind's eye over time.  These witnesses had interacted with defendants in a way the jury could not, and in natural settings that gave them a greater appreciation of defendants' normal appearance.  Thus, their testimony provided the jury with the opinion of those whose exposure was not limited to three days in a sterile courtroom setting.
>
> This fuller perspective is especially helpful where, as here, the photographs used for identification are less than clear.

*Id.* at 936.

"In *United States v. Robinson,* 804 F.2d 280 (4th Cir.1986), the court concluded the defendant's brother's identification testimony, based on surveillance photographs, was admissible under Federal Rule 701 as it would aid the jury in determining a key fact in issue." *Fripp,* 396 S.C. at 440, 721 S.E.2d at 468.

> Sylvester Robinson was an individual who could testify under this rule as a lay witness.  His testimony was based upon his perceptions from viewing the photographs and from his perceptions of and close association with his brother over the years.  Although the defendant's appearance may not have physically changed from the time of the bank surveillance photograph until the time of trial, the individual in the photograph was wearing a hat and dark glasses, and the testimony of Sylvester Robinson could be helpful to the jury on the issue of fact of whether the appellant was the

---

2. Rule 701 of the Federal Rules of Evidence states: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

person shown in the bank surveillance photographs. A lay witness may give an opinion concerning the identity of a person depicted in a surveillance photograph if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury. Sylvester Robinson certainly qualified as a person more likely to correctly identify the individual shown in the photograph.

*Id.* at 440–41, 721 S.E.2d at 468 (quoting *Robinson*, 804 F.2d at 282).

After analyzing federal law, this court stated "the surveillance video was not crystal clear and the perpetrator sought, in some measure, to obscure his identity by wearing the hood of his jacket up." *Id.* at 441, 721 S.E.2d at 468. "While the jury, having observed Fripp for a relatively brief period of time in the courtroom setting, may have believed Fripp was the person on the videotape, Brown's and Young's testimonies, based on their perceptions of him over time, aided the jury in making an ultimate determination as to the burglar's identity." *Id.* We then found that "the identification of a familiar person does not require any specialized knowledge, skill, experience, or training as contemplated by subpart (3) of Rule 701." *Id.* "Consequently, [this court] affirm[ed] the trial court's admission of Brown's and Young's identification testimonies." *Id.*

Here, we find these facts are analogous to *Fripp*, and the trial court did not err in introducing Lt. McClurkin's testimony pursuant to Rule 701, SCRE. Lt. McClurkin's perception of the person in the photographs was based on his firsthand knowledge of Mitchell. While Lt. McClurkin was not present during the alleged crime, he knew Mitchell through his twenty years of living in the Newberry area. This was the only fact presented at trial that allowed Lt. McClurkin to identify Mitchell, whereas in *Fripp*, the witnesses seemed to be able to describe their knowledge of the defendant from the community in more detail. However, that fact did give a basis for concluding that Lt. McClurkin was more likely to correctly identify the defendant from the photograph than the jury. Furthermore, the identity of the person in the photographs was a fact in issue, and Lt. McClurkin's identification of who he thought was in the photographs was surely helpful to the jury.

██ As we noted, we do not find Lt. McClurkin's testimony's probative value was outweighed by the prejudicial value under Rule 403, SCRE, based on Mitchell's contention that it was a lay opinion not based on personal observation. We also find the probative value of his testimony was not outweighed by the prejudicial effect based upon Mitchell's argument that Lt. McClurkin was a police officer offering his opinion as to Mitchell's identity. Lt. McClurkin was available for cross-examination by Mitchell, and his basis for identification was stated as simply having been in the Newberry community for twenty years. The trial court's jury instructions further undermined any prejudicial effect Lt. McClurkin's testimony may have had.[3] For the foregoing reasons, we affirm the trial court.

## II. Authentication of the disk with downloaded photographs

██ Mitchell contends the trial court erred in allowing the disk with the downloaded deer camera photographs to be admitted when the photographs were not properly authenticated. Specifically, Mitchell maintains that because the police did not take the camera into custody but left it with Potts to download the photographs onto his business computer, the evidence was admitted in violation of Rules 1001, 1002, and 1003, SCRE.[4] We disagree.

The pertinent section of Rule 1001, SCRE, states:

---

3. The jury instructions included the following statements, "[A]s I told you, you must consider and determine the credibility of the witnesses and of the exhibits.

And I told you some things you could use in engaging credibility ... [Y]ou may believe everything a witness says, you may believe nothing a witness says. You may believe parts of a witnesses [sic] testimony and disregard other parts. You may believe one witness over several or several over one. But remember that your job is to determine the true facts of the case and whether the state has met its burden of proof and you do that by weighing all the evidence, regardless of who called the witness."

4. At trial, Mitchell objected to the chain of custody of the disk as well. However, he appears to have abandoned that argument on appeal. *See* *Jinks v. Richland Cnty.*, 355 S.C. 341, 344, 585 S.E.2d 281, 283 (2003) (holding issues not argued in the brief are deemed abandoned and precluded from consideration on appeal).

An "original" of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it. An "original" of a photograph includes the negative or any print therefrom. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an "original".

Rule 1001(3), SCRE. Further, Rule 1001 defines a duplicate as "a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduces the original." Rule 1001(4), SCRE.

Rule 1002, SCRE, in addressing the requirements of an original, states that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." In addressing the admissibility of duplicates, Rule 1003, SCRE, states that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

█ "The question of whether to admit evidence under [Rules 1001 to 1004, collectively known as the best evidence rule,] is also addressed to the discretion of the trial court." *State v. Halcomb*, 382 S.C. 432, 443–44, 676 S.E.2d 149, 154–55 (Ct.App.2009).

We find the photographs from the disk were originals pursuant to Rule 1001, SCRE. Rule 1001(3), SCRE ("If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original'."). A digital camera was used, and the photographs from the disk were testified to as being the same photographs that were on the deer camera on October 28, 2008. Mitchell had the opportunity to cross-examine Potts and the police officers as to the handling of the photographs and disk on which the photographs were downloaded. We conclude the trial court properly admitted the photographs

from the disk as originals, and thus, Rule 1003 is not relevant to our analysis. For the foregoing reasons, we affirm the trial court.

### III. Motion for New Trial

Mitchell argues the trial court erred in denying his post-trial motion for a new trial on his first-degree burglary charge. Specifically, Mitchell contends all of the elements of first-degree burglary were not met because the intent to steal element was not proven since the jury found Mitchell not guilty of petit larceny. We disagree.

" 'The decision whether to grant a new trial rests within the sound discretion of the trial court, and [the appellate court] will not disturb the trial court's decision absent an abuse of discretion.' " *State v. Senter*, 396 S.C. 547, 552, 722 S.E.2d 233, 236 (Ct.App.2011) (quoting *State v. Mercer*, 381 S.C. 149, 166, 672 S.E.2d 556, 565 (2009)). "If there is no evidence to support a conviction, [this court] should uphold an order granting a new trial." *State v. Garrett*, 350 S.C. 613, 619, 567 S.E.2d 523, 526 (Ct.App.2002) (citing *State v. Smith*, 316 S.C. 53, 55, 447 S.E.2d 175, 176 (1993)). "However, if competent evidence supports the jury's verdict, the trial [court] may not substitute [its] own judgment for that of the jury and overturn that verdict." *Id.* (citing *State v. Miller*, 287 S.C. 280, 283, 337 S.E.2d 883, 885 (1985)).

We believe Mitchell's argument is referencing the "inconsistent verdict theory." However, our supreme court has abolished the rule against inconsistent verdicts in this state. *State v. Alexander*, 303 S.C. 377, 383, 401 S.E.2d 146, 150 (1991). Moreover, we find the verdicts are not necessarily inconsistent. Mitchell was charged and convicted of first-degree burglary, pursuant to section 16–11–311(A) of the South Carolina Code (2003). The pertinent portion of the statute states: "A person is guilty of burglary in the first degree if the person enters a dwelling without consent and *with intent to commit a crime in the dwelling....*" S.C.Code Ann. § 16–11–311(A) (2003) (emphasis added). Mitchell was identified from photographs on the deer camera in Potts's home. Potts testified that he did not recognize the person in the photographs and had not given permission for that person

to be in his home.  There was testimony Mitchell held a bag and a flashlight in one of the photographs, and the photograph was admitted into evidence.  A jury could have inferred that Mitchell intended to commit a crime while in Potts's home, and due to a multitude of scenarios, was unable or decided not to carry out the intended crime.  Thus, the trial court did not err in denying Mitchell's post-trial motion for a new trial.  For the forgoing reasons, we affirm the trial court.

## CONCLUSION

Accordingly, we find the trial court did not abuse its discretion regarding the issues on appeal.  Thus, we affirm the trial court.

**AFFIRMED.**

WILLIAMS and THOMAS, JJ., concur.